**UNITED STATES of America, Appellee,**

**v.**

**Robert E. WHITE, Appellant.**

**No. 94–1594.**

United States Court of Appeals, Eighth Circuit.

Submitted July 25, 1994.

Decided Dec. 7, 1994.

---

458

Ramona L. Marten, St. Louis, MO, argued (N. Scott Rosenblum, on the brief), for appellant.

Howard J. Marcus, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before BOWMAN, MAGILL, and HANSEN, Circuit Judges.

MAGILL, Circuit Judge.

Robert E. White appeals from the district court's[1] denial of his motion to suppress evidence seized during a search of his rental truck after a traffic stop. White entered a conditional plea of guilty to possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), and was sentenced to a term of sixty months imprisonment. We affirm.

On the morning of February 13, 1993, patrolling Interstate 44 in St. Louis County, Corporal Sean Moore of the Missouri Highway Patrol saw a Hertz–Penske rental truck swerve from the center lane to the right lane, swerve again from the right lane all the way to the left lane, and then return to the center lane. He pulled the truck over and asked if the driver, White, was tired or if he had been drinking. White responded that he had been picking something up from the floor of the truck. Corporal Moore asked for White's license and rental agreement. The license showed an El Paso address, and the rental agreement showed that the truck had been picked up in Albuquerque and paid for in cash by White. White stated that he was employed by "P & E Rug Company," and that he was delivering Mexican blankets to Cleveland, but was unable to state the address in Cleveland. White was also unable to provide a bill of lading, shipping papers or a commercial transportation permit for the blankets. In the passenger area of the truck, Moore saw a radar detector, laser detector and ham radio.

Corporal Moore issued a warning ticket to White, and then asked why the truck had been rented in Albuquerque. White responded that, although his employers were

---

1. The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

based in El Paso, he had picked up the blankets in Albuquerque. He appeared to be extremely nervous, and his eyes were very wide. Moore returned the driver's license and rental agreement and told White that he was free to go, but asked him if he could search the truck. White answered yes.

Moore asked White if he could open the sliding door between the cab and the cargo area. White answered affirmatively. In the cargo area of the truck, there were several clothing bags and many stacks of Mexican blankets. Moore then asked if he could look through the area between the driver's area and the sliding door, to which White again answered affirmatively. In this area, Moore saw several blankets covering cardboard boxes. White stated that there were two boxes containing an expensive variety of Mexican blankets. Moore, however, saw four boxes, and noted, shining a flashlight through an opening in one of the boxes, that the blankets in it were crumpled, rather than neatly folded like the blankets in the cargo area. Moore asked White if he could open one of the boxes. White did not agree to allow Moore to open the boxes, and asked Moore why he was "harassing" him.

At 10:10 a.m., Moore requested that a drug dog be sent to the site of the stop, and told White that he was free to leave, but that the truck would be detained pending arrival of the dog. White chose to stay at the site. Trooper Wade Stewart arrived at the site, and offered to drive White to a nearby restaurant with a telephone, but White declined. White told Stewart that he had bought the blankets at a swap meet in Albuquerque.

At 11:30 a.m., Corporal Althange arrived at the site with the drug dog. The dog "alerted" to the driver's side door of the truck, and then to the exposed box in which Moore had seen the crumpled blankets. Corporal Moore then opened one of the boxes, finding a bale of marijuana under two or three blankets. Three of the four boxes in that area of the truck contained marijuana, for a total of 370 pounds. White was placed under arrest.

White moved to suppress the evidence found during the search of the truck. Following a hearing, the district court denied the motion and admitted the evidence. White entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. He was sentenced to sixty months imprisonment and has appealed the district court's denial of his motion to suppress.

White first argues that the initial stop by Corporal Moore was pretextual. We review the district court's finding that the initial stop was not pretextual for clear error. *United States v. Bloomfield,* 40 F.3d 910, 915 (8th Cir.1994) (en banc). Any traffic violation, however minor, provides probable cause for a traffic stop. *United States v. Barahona,* 990 F.2d 412, 416 (8th Cir.1993). An abrupt change of lanes without signaling constitutes a legitimate reason for a traffic stop. *Bloomfield,* 40 F.3d at 915. The uncontested evidence showed that White committed a traffic violation by swerving across lanes repeatedly, and the district court did not err in finding that the stop was not pretextual. Once Moore stopped White, he was entitled to ask for White's license and rental agreement and to ask White about his destination and purpose. *See id.* The reasonable scope of the initial traffic stop extended until Moore asked White if he could search the truck.

White contends that his consent to the search of the truck was involuntary, and that the ensuing search was invalid. We review the district court's determination of whether voluntary consent to a search was given under the clearly erroneous standard. *Barahona,* 990 F.2d at 417. A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion. *United States v. Cortez,* 935 F.2d 135, 142 (8th Cir.1991), *cert. denied,* ——— U.S. ———, 112 S.Ct. 945, 117 L.Ed.2d 114 (1992). Before asking White if he could search the truck, Moore issued him a warning ticket, returned his license and rental agreement, and told him that he could go on his way. When Moore asked if he could search, first the cargo area of the truck, and then the area between the sliding door and the driver's area, White both times clearly gave his verbal consent. He provided

Moore with the keys to the cargo area. We find that there was no error in the district court's finding that the search of the truck was voluntary.

White argues further that the detention of his truck violated the Fourth Amendment. If during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has "justification for a greater intrusion unrelated to the traffic offense." *United States v. Cummins*, 920 F.2d 498, 502 (8th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991). We review the factual findings of the district court as to what the parties said or did for clear error; we review the district court's finding that the Fourth Amendment has not been violated de novo. *Bloomfield*, 40 F.3d at 918. When Moore responded to White's failure to consent to a search of the boxes by detaining the truck and calling for a drug dog, he had a reasonable suspicion that White was transporting drugs. Moore had observed that White was extremely nervous, that he claimed to be transporting blankets for P & E Rug Company, but could not state the address to which he was to deliver the blankets, did not have a bill of lading or permit for transporting the blankets, had rented the truck in his own name for cash, had a laser detector, radar detector and ham radio in the cab, and was traveling from El Paso and Albuquerque, known source cities for drugs. Further, White claimed that there were only two boxes set apart in the area behind the driver's area, but Moore saw four, and White claimed that these boxes contained more expensive blankets, yet Moore saw that the blankets in these boxes were crumpled, not folded. The sum of Moore's observations constitutes a reasonable, articulable suspicion that White was transporting drugs. *See id.* at 918–19. Although there is a possible innocent explanation for each of the factors, as a totality they created a reasonable suspicion justifying further investigation reasonable in scope. *See id.*

The wait of about one hour and twenty minutes pending arrival of the drug dog was a reasonable period to detain the truck. *See id.* at 916–17 (one-hour wait for drug dog reasonable). Moore acted diligently to obtain the dog, and the delay was caused only by the remote location of the closest available dog. *See id.* ("local government police forces and the state highway patrol cannot be expected to have drug dogs immediately available to all officers in the field at all times"). The district court did not err in finding that Officer Moore had a reasonable suspicion justifying detention of the truck, nor in finding that the length of the detention was reasonable.

For the reasons discussed above, we affirm the decision of the district court to deny White's motion to suppress evidence.