United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-3479

_____

United States of America,          *
                                   *
          Appellee,                *
                                   *     Appeals from the United States
     v.                            *     District Court for the
                                   *     Eastern District of Arkansas.
 Calvin N. Munroe,                 *
                                   *
          Appellant.               *

_____

No. 97-3947

_____

United States of America,          *
                                   *
          Appellee,                *
                                   *
     v.                            *
                                   *
Daniel Alexander Barnes,           *
                                   *
          Appellant.               *

_____

Submitted: March 5, 1998
Filed: May 8, 1998

_____

Before McMILLIAN, BEAM, and LOKEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Daniel Barnes and Calvin Munroe appeal the district court's[1] denial of their motions to suppress evidence. Barnes and Munroe each entered a conditional plea of guilty to conspiracy to possess 1,090 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841 and 846. We affirm.

## I.    BACKGROUND

Driving an eighteen-wheel truck tractor, Barnes exited Interstate 40 at approximately 7:45 a.m., to have the vehicle weighed at an Arkansas inspection station. The vehicle did not have a trailer or a load. Nonetheless, when it crossed the weigh-in-motion scale, its front axle exceeded the allowable weight limit by one thousand pounds. The monitoring computer alerted the inspection station officers, Scott Fraley and Billy Brown of the Arkansas Highway Police, who stopped the vehicle.

The officers summoned Barnes and his passenger, Munroe, into the inspection station building. They asked Barnes for his driver's log book, see 49 C.F.R. § 395.8, and for the vehicle's registration. Barnes could not produce his log book, prompting the officers to issue an additional citation. The officers asked Barnes and Munroe about their destination and origin, why they did not have the necessary paperwork, and why they were not carrying a load. Barnes responded that the two had just met, that the vehicle was Munroe's, that he was driving it because he intended to apply for employment with Munroe's company, and that they were going to a truck stop for breakfast. Munroe stated that he was returning from Memphis, when, in fact, he was driving toward Memphis. After hesitating, he said that he had dropped off his trailer and load in Memphis, but on further inquiry, he could not explain what the load consisted of or remember where he delivered it.

---

[1]The Honorable James M. Moody, Chief Judge, United States District Court for the Eastern District of Arkansas.

When informed of the officers' intention to conduct a vehicle safety inspection, Munroe became upset and nervous. He repeatedly looked toward the vehicle and asked why the officers needed to inspect it. At one point, Munroe grabbed the paperwork that the officers were preparing, exited the building, and walked toward the vehicle, only to return on Officer Fraley's command. The officers then requested consent to search the vehicle, which was denied.

Having failed to obtain consent, the officers summoned a K-9 unit, which arrived ten minutes later, at 8:25 a.m. The drug dog alerted. Officers Fraley and Brown subsequently searched the vehicle and discovered what had tipped the scale, 2,398 pounds of marijuana. They also found a handgun.

Barnes and Munroe were arrested and charged with violations of federal drug laws. See 21 U.S.C. §§ 841 and 846. After the district court denied their motions to suppress, Barnes and Munroe entered conditional guilty pleas. On appeal, they contend that their Fourth Amendment rights were violated when the Arkansas Highway Police detained the vehicle.

## II.    DISCUSSION

Barnes and Munroe do not dispute the validity of the initial traffic stop. Instead, they contend that the Arkansas Highway Police unjustifiably detained the vehicle beyond the scope of a traffic stop. We disagree.

When reviewing a denial of a motion to suppress, we accept the trial court's factual findings unless clearly erroneous. See United States v. Juvenile T.K., 134 F.3d 899, 902 (8th Cir. 1998). We review the ultimate determinations of probable cause and reasonable suspicion de novo. See id.

The overweight axle violated Arkansas law, see Ark. Code Ann. § 27-35-203(c), thus providing the officers with probable cause to stop the vehicle and conduct a reasonable investigation.[2] See United States v. Bloomfield, 40 F.3d 910, 915 (8th Cir. 1994). A reasonable investigation includes asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose. See id. Considering the commercial nature of the vehicle, it was also reasonable for the officers to request the driver's log book. When Barnes could not produce a log book, the scope of the initial traffic stop was thereby extended to the additional violation. See United States v. Johnson, 58 F.3d 356, 358 (8th Cir. 1995). The record shows that, before they requested the K-9 unit, the officers' inquiries were within the scope of a reasonable investigation into the traffic violations.

The detention of the vehicle beyond the traffic stop,[3] if such occurred, was also justified because the totality of the officers' observations supported a reasonable suspicion of criminal activity. See Terry v. Ohio, 392 U.S. 1, 25-30 (1968); United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993). Barnes and Munroe claimed that they had just met, despite the fact that Barnes was driving Munroe's vehicle. They did not know their destination. Barnes did not have his log book. They both appeared nervous and Munroe attempted to approach the vehicle after grabbing the officers' paperwork. Moreover, Officer Fraley testified that, in his five years of working at the

---

[2]The overweight axle authorized the vehicle safety inspection, see Ark. Code Ann. § 27-32-114, which was ultimately conducted after the officers had searched the vehicle for drugs.

[3]Since the canine sniff was not a Fourth Amendment search, see United States v. Friend, 50 F.3d 548, 552 (8th Cir. 1995) (finding that a canine sniff is not a search), *vacated on other grounds*, 517 U.S. 1152 (1996), and Arkansas law permits the detention of vehicles for the purpose of conducting safety inspections, see Ark. Code Ann. § 27-32-114, we note that reasonable suspicion may not have been necessary to legally detain the vehicle. However, we leave that analysis for another day.

inspection station, he had never before seen an overweight axle on an eighteen-wheel vehicle that did not have a trailer.

The officers' reasonable suspicion justified detaining the vehicle until the K-9 team arrived. See United States v. White, 42 F.3d 457, 460 (8th Cir. 1994). The length of this detention was reasonable because the canine sniff occurred ten minutes later. See id. When the canine alerted, the officers then had probable cause to search the vehicle and did not need a search warrant under the automobile exception. See Chambers v. Maroney, 399 U.S. 42, 52 (1970).

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.