# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1448

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| April D. Lebrun, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  June 12, 2001

Filed: August 15, 2001

_____

Before MORRIS SHEPPARD ARNOLD and RICHARD S. ARNOLD, Circuit Judges, and TUNHEIM,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

April D. Lebrun was convicted of possessing methamphetamine with the intent to distribute it, *see* 21 U.S.C. § 841(a)(1), after Officer Rex Scism of the Missouri Highway Patrol found the drug in her vehicle during a routine traffic stop.  Ms. Lebrun moved to suppress the drug evidence, asserting that Officer Scism violated her Fourth Amendment rights when, on the basis of his suspicions, he detained her vehicle for the

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

purpose of allowing a drug dog to sniff it. The district court[2] rejected her argument and concluded that the search was proper.

Ms. Lebrun now appeals, maintaining that the district court erred when it determined that Officer Scism's search of her vehicle was proper and refused to suppress the drug evidence produced by that search. We affirm the judgment of the district court.

Ms. Lebrun does not contest the validity of the initial traffic stop. Instead, she challenges the validity of Officer Scism's subsequent decision to detain her vehicle until a drug dog could be brought to the scene. We review the district court's factual findings under the clearly erroneous standard and its conclusion as to whether a violation of the Fourth Amendment has occurred *de novo*. *See United States v. Garcia*, 23 F.3d 1331, 1334 (8th Cir. 1994).

A law enforcement officer is allowed to make a limited seizure of individuals suspected of criminal activity if he or she has "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). To determine whether facts known to an officer permit the requisite degree of suspicion to justify a so-called *Terry* stop, the totality of the circumstances must be considered. *See United States v. Sokolow*, 490 U.S. 1, 8 (1989); *United States v. Hawthorne*, 982 F.2d 1186, 1189 (8th Cir. 1992). An officer never has a sufficient basis to order a seizure if he is acting on merely an "inchoate and unparticularized suspicion or 'hunch.' " *See Terry*, 392 U.S. at 27.

---

[2]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable William A. Knox, United States Magistrate Judge for the Western District of Missouri. *See* 28 U.S.C. § 636(b)(1)(B).

At the time of the traffic stop, Ms. Lebrun and another individual were passengers in a vehicle that Ms. Lebrun had rented; Steven Krebbs was the driver. While Officer Scism conducted the traffic stop and prepared a warning citation to Mr. Krebbs, he asked all three of the occupants of the vehicle some routine questions about their travel plan and the purpose of their trip, and received vague and confused answers from them. Officer Scism also noticed that they were all unusually nervous: Mr. Krebbs was sweating profusely even though the temperature was cold, Ms. Lebrun fidgeted and kept moving around in her seat, and the other passenger would not make eye contact with the officer and her hands trembled excessively. Last, Officer Scism saw that there were drink containers, food wrappers, a cellular telephone, a road atlas, pillows, and blankets in Ms. Lebrun's vehicle. From this, Officer Scism concluded that the occupants of the car were traveling without making any stops, a common practice, he testified, among drug traffickers.

Based on these facts, we believe that Officer Scism had a sufficient basis upon which to form a particularized suspicion of criminal activity. We are aware that some of the things that Officer Scism observed, such as the food wrappers and a cellular phone in Ms. Lebrun's vehicle, are consistent with innocent travel. We are also mindful, however, that innocent facts, when considered together, can give rise to a reasonable suspicion. *See Sokolow*, 490 U.S. at 9-10. This is especially true when we view the totality of the circumstances through the perspective of an experienced law enforcement officer trained in crime detection and acquainted with the behavior of criminals. *See United States v. Wallraff*, 705 F.2d 980, 988 (8th Cir. 1983). In this case, Officer Scism's thirteen years of experience as a law enforcement officer cannot be lightly disregarded in determining whether he had a reasonable suspicion to conduct the seizure. *Cf. United States v. Neumann*, 183 F.3d 753, 756 (8th Cir. 1999).

Ms. Lebrun's effort to bring her case within the rule of *United States v. Beck*, 140 F.3d 1129 (8th Cir. 1998), a case in which we held that seized evidence should have been suppressed, fails for a number of reasons. First, although it is true that the

defendant in *Beck* appeared nervous when he was confronted by the police, *see* 140 F.3d at 1132, in this case Ms. Lebrun and her associates were exceptionally nervous when they were stopped by Officer Scism and they became only more agitated when he started to ask them questions. Furthermore, unlike the defendant in *Beck*, here the vehicle's occupants provided conflicting and inconsistent answers to Officer Scism about the details of their trip. Finally, when we evaluate Officer Scism's observations about the suspicious conduct of the occupants of the car, we give weight to his extensive experience as a veteran law enforcement officer familiar with drug trafficking, a matter not adverted to in *Beck*.

Ms. Lebrun also maintains that Officer Scism detained her too long while he was waiting for the drug dog to arrive, and that he asked her inappropriate questions during the traffic stop. We find no merit in these arguments.

The district judge found that the dog arrived at the scene of the traffic stop approximately twenty minutes after Officer Scism requested assistance, and this finding is not clearly erroneous. As the Supreme Court has held, there is "no rigid time limitation on *Terry* stops." *United States v. Sharpe*, 470 U.S. 675, 685 (1985). Whether a seizure by the police should be deemed unconstitutional because it lasted too long depends, in part, on the amount of time that is required to effect a legitimate law enforcement purpose. *See United States v. Bloomfield*, 40 F.3d 910, 917 (8th Cir. 1994) (*en banc*), *cert. denied*, 514 U.S. 1113 (1995). We observe that the police cannot reasonably be expected to have dogs available for every police officer at every moment, *see id.*, and we do not think that the length of the detention in this case was excessive given Officer Scism's legitimate need to call for a drug dog. We also do not believe that the routine questions, rehearsed above, that Officer Scism asked after he stopped Ms. Lebrun's vehicle amounted to an unreasonable investigation. *See United States v. Munroe*, 143 F.3d 1113, 1115-16 (8th Cir. 1998); *see also United States v. Weaver*, 966 F.2d 391, 393 (8th Cir. 1992), *cert. denied*, 506 U.S. 1040 (1992).

For the reasons indicated, we affirm the judgment of the district court.

TUNHEIM, District Judge, dissenting.

I respectfully dissent. I would have reversed the district court's decision and suppressed the drug evidence uncovered during Officer Schism's search of the vehicle.

In my opinion, this case is controlled by the Court's earlier decision in United States v. Beck, 140 F.3d 1129 (8th Cir. 1998). In Beck, the Court concluded that the following circumstances did not create reasonable articulable suspicion: (1) Beck was driving a rental car which had been rented by an absent third party; (2) the car was licensed in California and was stopped in Arkansas; (3) there was fast food trash on the floor; (4) there was no visible luggage in the passenger compartment; (5) Beck's nervous demeanor; (6) Beck's trip from a source state to a drug demand state; and (7) the officer's disbelief of Beck's explanation for the trip. Beck, 140 F.3d at 1137.

The majority attempts to distinguish Beck on the grounds that the passengers in the car were "unusually" and "exceptionally" nervous and that they provided Officer Schism with vague and confused answers regarding the details surrounding their trip. I am troubled by the Court's reliance on such an imprecise standard as the relative nervousness of the passengers to distinguish Beck. There is little doubt that a vast majority of travelers stopped by law enforcement officers are nervous to some degree. It also seems beyond dispute that individuals manifest that nervousness in different ways. The majority's attempt to distinguish Beck on the basis of the passengers' "unusually nervous" or "exceptionally nervous" behavior leaves law enforcement officers with little guidance as to what constitutes reasonable articulable suspicion, and district courts with a standard that is very difficult to apply.

In addition, it is certainly not unusual for any vehicle on the road to contain food wrappers, a cellular phone, a road atlas, a pillow and a blanket. Indeed, many might

argue that prudent travelers should carry most, if not all, of these items in their vehicle. Moreover, the "vague and confused" answers of the passengers do not persuade me that this case is distinguishable from Beck. The driver of the vehicle told Officer Schism that the passengers were on their way back to Indiana after having taken a five-year-old child, whom he referred to as defendant's "cousin," back to the child's parents' home in Hutchinson, Kansas. The driver explained to Schism that the child had been staying with them in Indiana over the holidays. Later, defendant told Officer Schism that she and the others had taken the child, her "old man's nephew," back to Kansas after the child had stayed with them for a few days. The only apparent "confusion" in the two stories was the fact that defendant could not name the particular city in Kansas where they had dropped the child off.

The initial stop by Officer Schism in this case was proper. However, once he issued the warning for speeding and returned the driver's license and rental papers for the vehicle to the driver, the stop was complete. United States v. $404,905 in U.S. Currency, 182 F.3d 643, 648-49 (8th Cir. 1999); Beck, 140 F.3d at 1135. After that point, the officer's questions about searching the vehicle were consensual until defendant was told that the vehicle would be subjected to a dog sniff. At that time, the Court must inquire as to whether Officer Schism had reasonable articulable suspicion to detain the passengers while waiting for the canine unit.

The facts, when viewed in totality, do not rise to the level of reasonable suspicion, but in my opinion are consistent with the behavior of most innocent travelers. While law enforcement officers certainly should be permitted to rely on their experience and expertise in detecting criminal behavior, there is a point at which "experience" becomes only an "unparticularized suspicion or 'hunch.'" Terry v. Ohio, 392 U.S. 1, 27 (1968). I believe this case is one of those situations in which that line has been crossed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.