# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1838

_____

United States of America,     *
                                       *

           Appellee,          *

                                         *    Appeal from the United States

      v.                             *    District Court for the

                                         *    Northern District of Iowa.

Kevin P. Donnelly,           *

                                        *

          Appellant.         *

_____

Submitted: October 17, 2006
Filed: February 5, 2007

_____

Before WOLLMAN, RILEY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Kevin Donnelly entered a conditional plea of guilty to a charge of knowingly and intentionally possessing pseudoephedrine pills with knowledge or reasonable cause to believe that the pseudoephedrine would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 841(c)(2). The district court[1] sentenced him to 108 months in prison, to be followed by three years of supervised release. Donnelly now appeals, arguing that the evidence should have been suppressed; he also contends that his sentence is unreasonable. We affirm.

_____

[1]The Honorable Linda R. Reade, now Chief Judge, United States District Court for the Northern District of Iowa.

## I. Background

On July 12, 2003, at 10:50 a.m., Donnelly's car sideswiped a semi-truck on westbound Interstate 80 in Cedar County, Iowa. Iowa state Highway Patrol Trooper Fitzer arrived at the scene at 11:03 a.m. After speaking with Donnelly and the truck driver, Fitzer learned that Donnelly had fallen asleep at the wheel, crossed into the other lane of traffic, and sideswiped the truck. All of this occurred on a bright, sunny day. The truck driver informed Fitzer that Donnelly had not wanted the police to be called.

Fitzer observed that although he smelled no alcohol on him, Donnelly had bloodshot, glazed-over eyes and seemed to be possibly impaired. Moreover, Donnelly appeared nervous in a manner noticeably different from that of a shaken-up accident victim. Fitzer asked Donnelly about his origin and destination. Donnelly answered that he had been driving from Wisconsin to Ottumwa, Iowa, for a family reunion. He said that he had originally intended to drive to Chicago after the reunion, from where he would fly to London for a business trip. Because he had forgotten his passport in Wisconsin, however, he would have to return to Wisconsin to retrieve it prior to driving to Chicago. Fitzer found it odd that Donnelly did not seem at all perturbed about having to make additional multi-state trips to recover the forgotten passport.

Fitzer then proceeded to ask Donnelly a series of twelve questions, pausing after each to allow an answer. He asked if Donnelly had been traveling with large amounts of cash, weapons, cocaine, heroin, crank, methamphetamine, marijuana, and other items of contraband. Donnelly clearly and quickly answered "no" to every question except for those concerning possession of methamphetamine and marijuana. On those two questions, "he kind of hesitated and stumbled a little bit in his speech," Sentencing Tr. at 16, before denying possession. After Donnelly denied Fitzer's request for permission to search his car's trunk, Fitzer returned to his patrol car at

11:15 a.m. and requested that a canine unit trained in detecting controlled substances be dispatched to the scene.

Officer Neville arrived with his trained drug-sniffing dog, Baron, at 12:14 p.m. At that time, Fitzer was still completing his police report. After Neville led Baron around Donnelly's car, Baron positively indicated controlled substances within the vehicle. Fitzer searched the car and discovered methamphetamine, marijuana, and pseudoephedrine tablets.

Donnelly moved to suppress the drug evidence, arguing that Fitzer had unconstitutionally seized him by asking him additional questions and by requiring him to wait for the drug dog in the absence of reasonable suspicion. Both the magistrate judge[2] and district court found that Fitzer had reasonable suspicion to justify calling in a canine unit. The district court did not consider the wait for Neville to be unreasonably long. It also implicitly accepted the magistrate judge's conclusion that Baron's positive indication was sufficiently reliable to establish probable cause despite evidence that Baron's record for field accuracy was spotty. Following the denial of his suppression motion, Donnelly entered a conditional plea of guilty and, after being awarded a three-level reduction for his acceptance of responsibility and his rehabilitative efforts, received a sentence falling within the recommended guidelines range.

## II. Analysis

Donnelly contends that the drug evidence should have been suppressed because (1) Fitzer lacked reasonable suspicion to question Donnelly about contraband or to radio for a drug dog and therefore unconstitutionally prolonged his detention, (2) any

---

[2]The Honorable John A. Jarvey, Chief Magistrate Judge, United States District Court for the Northern District of Iowa.

arguably present reasonable suspicion did not justify detaining Donnelly for the 80 minutes it took to complete the sniff, and (3) Baron's track record did not justify reliance on his positive indication as a basis for probable cause. He also contends that his sentence is unreasonable.

## A. Denial of the Suppression Motion

We review *de novo* the district court's determination that reasonable suspicion and probable cause existed. United States v. Maltais, 403 F.3d 550, 554 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1345 (2006); United States v. Beck, 140 F.3d 1129, 1133 (8th Cir. 1998). We review the district court's factual findings under a clearly erroneous standard. United States v. Lebrun, 261 F.3d 731, 733 (8th Cir. 2001). We will affirm the denial of a suppression motion "unless we find that the decision is unsupported by the evidence, based on an erroneous view of the law, or the Court is left with a firm conviction that a mistake has been made." United States v. Madrid, 152 F.3d 1034, 1037 (8th Cir. 1998) (citation and internal quotation marks omitted).

### i. Reasonable Suspicion for Contraband Questions and a Drug-Dog Sniff

Donnelly contends that by questioning him about contraband and by requiring him to wait for a drug-sniffing dog, Fitzer unreasonably prolonged his detention. We disagree. To establish an unreasonably prolonged detention, the defendant must show that the officer detained him beyond the amount of time otherwise justified by the purpose of the stop and did so without reasonable suspicion. See United States v. Martin, 411 F.3d 998, 1002 (8th Cir. 2005); see also United States v. Jones, 269 F.3d 919, 926 (8th Cir. 2001) ("investigative detention must remain within the scope of the traffic stop to be reasonable"). We must consider, then, whether Fitzer had a reasonable suspicion of criminal activity sufficient to expand the scope of his accident investigation to include the potential presence of contraband. See Terry v. Ohio, 392 U.S. 1, 30 (1968).

For an investigative Terry-type seizure to be constitutional under the Fourth Amendment, an officer must be aware of "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." United States v. Martin, 706 F.2d 263, 265 (8th Cir. 1983); see also Terry, 392 U.S. at 20-21. Although a reasonable suspicion requires more than an "inchoate hunch," the officer need only "articulate some minimal, objective justification for an investigatory stop" in order to comply with the Fourth Amendment. United States v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004) (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." United States v. Garcia, 23 F.3d 1331, 1334 (8th Cir. 1994). When considering the circumstances involved, due weight must be given "to the factual inferences drawn by the law enforcement officer." United States v. Arvizu, 534 U.S. 266, 277 (2002); cf. United States v. Wallraff, 705 F.2d 980, 988 (8th Cir. 1983) ("conduct which would be wholly innocent to the untrained observer . . . might acquire significance when viewed by an agent who is familiar with the practices of drug smugglers and the methods used to avoid detection" (internal quotations omitted)); Illinois v. Gates, 462 U.S. 213, 232 (1983) (explaining that a court's review of evidence "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement").

Donnelly contends that the circumstances gave rise to, at most, a reasonable suspicion that he was driving while impaired. We disagree. Donnelly's admission that he had fallen asleep at the wheel in broad daylight, his glassy, bloodshot eyes, see United States v. Neeman, 2000 WL 489581, *1 (8th Cir. 2000) (unpublished table

decision),[3] his attempt to avoid police involvement, the nonchalance with which he recounted to Fitzer an arguably implausible itinerary involving a number of multi-state trips to recover a forgotten passport, and the nervousness he exhibited, which, in Fitzer's experience, appeared to be of a nature atypical of accident victims, see, e.g., United States v. Weaver, 966 F.2d 391, 396 (8th Cir. 1992), when combined with the nature of the accident and the absence of alcohol-based impairment indicia, formed the basis for a reasonable suspicion that Donnelly may have been transporting and using drugs.

Donnelly argues that each of the foregoing factors has an innocent explanation that should not be combined to form reasonable suspicion. When considered together, however, otherwise innocent facts can give rise to a reasonable suspicion, especially when viewed through the perspective of an experienced law enforcement officer. Lebrun, 261 F.3d at 733; see also Fuse, 391 F.3d at 929; United States v. Linkous, 285 F.3d 716, 720 (8th Cir. 2002). We conclude that this is one of those cases. Given the totality of the circumstances, then, we conclude that Fitzer possessed a "minimal, objective justification" for investigating the potential presence of contraband. See Fuse, 391 F.3d at 929.

Fitzer's subsequent contraband questions represented a minimally intrusive way of addressing his reasonable suspicion; asking them did not, therefore, constitute an unreasonably prolonged detention. After Donnelly gave noticeably irregular denials to questions involving methamphetamine and marijuana, Fitzer's suspicions were

---

[3]Officers found Neeman asleep in a car that was parked askew with its lights on and engine running. After they woke him up, the officers noticed that Neeman had watery, red eyes. Although Neeman passed the field sobriety tests subsequently administered to him, the officers continued to detain him while they visually inspected his vehicle. The officers found marijuana. We held that the detention for the vehicle inspection was appropriately supported by the suspicious circumstances present. Neeman, 2000 WL 489581, *1.

strengthened rather than alleviated.  See United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993) ("[I]f the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions.").  Accordingly, Fitzer possessed a reasonable suspicion necessary to justify the deployment of a drug-dog to sniff the vehicle.

## ii. Reasonable Delay

Donnelly contends that even if Fitzer held a reasonable suspicion that Donnelly's car contained drugs, United States v. Place, 462 U.S. 696, 709-10 (1983), requires us to find the detention unconstitutional.  Again, we disagree.

An investigative detention may turn into an arrest if it "lasts for an unreasonably long time or if officers use unreasonable force."  United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1999).  During an investigative stop, officers should "employ the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose" of the stop.  Id.

Although the Supreme Court in Place did declare unreasonable the police's seizure of a suspected drug trafficker's luggage for 90 minutes so that it could be taken to another airport for a dog-sniff, the decision turned more on the unnecessary nature of the delay than on its duration.  462 U.S. at 709-10 (noting that the police knew when Place would arrive and that they would want to investigate his bag; therefore, they could have arranged for a drug dog's presence well in advance).  We have considered time an important factor in distinguishing between a legitimate investigative stop and a *de facto* arrest, United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994) (en banc), but we recognize that there is "no rigid time limitation on [investigative] stops."  United States v. Sharpe, 470 U.S. 675, 685 (1985); see also Place, 462 U.S. at 709-10 n.10 ("[W]e question the wisdom of a rigid time limitation.

-7-

Such a limit would undermine the . . . important need to allow authorities to graduate their responses to the demands of any particular situation."). Accordingly, under the proper circumstances, we have considered delays for dog-sniffs far in excess of 90 minutes reasonable. See Maltais, 403 F.3d at 557-58 (holding that a three-hour delay allowing a drug dog to reach the remote location of the investigation was acceptable because the officers "acted with diligence and pursued the quickest and least intrusive means of investigation reasonably available to confirm or dispel their . . . suspicions that [the defendant] was engaged in drug trafficking.").

Nothing in the record suggests that Fitzer exercised suboptimal diligence in investigating his suspicion of drugs in Donnelly's vehicle[4] or that Neville had been dilatory in mobilizing Baron to the scene, which was a rural section of Interstate 80. Unlike the officers in Place, who knew well in advance that they would need a drug-sniffing dog yet did nothing to ensure one's presence, Fitzer called in his request for a drug-dog within twelve minutes of his arrival and immediately after he developed a reasonable suspicion of narcotics possession and was denied access to Donnelly's trunk. Donnelly has not suggested that a similarly trained canine unit could have reached the scene sooner. Furthermore, we have previously acknowledged that "[w]hen police need the assistance of a drug dog in roadside Terry stops, it will in general take time to obtain one. . . ." Bloomfield, 40 F.3d at 917. The constitutional prohibition against unreasonable seizures does not require "law enforcement officials, at considerable public expense, to maintain specialized personnel and equipment at remote locations at all hours of the day and night, or to forgo the timely investigation of serious offenses as to which they have reasonable, articulable suspicion. . . ."

_____

[4]In fact, the Supreme Court has lauded the use of drug-sniffing dogs for their unique ability to directly dispel suspicion quickly and with minimal intrusion. See Bloomfield, 40 F.3d at 917 n.7 (recognizing that the Supreme Court considers drug-dog sniffs "often the fastest and least intrusive method of resolving suspicions during an investigative stop"); Place, 462 U.S. at 707 ("[i]n these respects, the canine sniff is *sui generis*").

<u>Maltais</u>, 403 F.3d at 558. Accordingly, we conclude that the detention was reasonable in the circumstances presented.

### iii. Probable Cause

Donnelly next argues that Baron's positive indication could not establish probable cause because Baron lacked a track record of sufficient reliability. We agree with the government that, under the totality of the circumstances, Baron's indication added enough new information to elevate Fitzer's reasonable suspicion to probable cause.

Law enforcement officials require probable cause to search a vehicle without a warrant. <u>United States v. Ameling</u>, 328 F.3d 443, 448 (8th Cir. 2003). Probable cause exists where there is a "fair probability that contraband or evidence of a crime will be found in a particular place." <u>Gates</u>, 462 U.S. at 238. Determining whether probable cause exists at the time of the search is a "commonsense, practical question" to be judged from the "totality-of-the-circumstances." <u>Id.</u> at 230. "Probable cause . . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." <u>United States v. Mounts</u> 248 F.3d 712, 715 (7th Cir. 2001) (quoting <u>United States v. Sawyer</u>, 224 F.3d 675, 678-79 (7th Cir. 2000)); <u>see also</u> <u>United States v. Carpenter</u>, 462 F.3d 981, 986 (8th Cir. 2006) (pointing out that reasonable suspicion has a lower threshold than probable cause and a considerably lower threshold than preponderance of the evidence); <u>Gates</u>, 462 U.S. at 244 n.13.

Assuming that the dog is reliable, a dog sniff resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present. <u>United States v. Sundby</u>, 186 F.3d 873, 875-76 (8th Cir. 1999). In finding sufficient the affidavit at issue in <u>Sundby</u>, we declared that "[in order to establish the dog's reliability,] the affidavit need only state the dog has been trained

and certified to detect drugs. . . . An affidavit need not give a detailed account of the dog's track record or education." Id. at 876 (citations omitted). Such statements only establish the affidavit's facial validity, however. Id. (holding that the defendant would have been entitled to a Franks hearing had he shown that officers withheld negative information casting into doubt the dog's reliability).

Because Baron's performance record raises questions about his reliability, further inquiry was required. According to the record, non-trace quantities of drugs are discovered at least fifty-four percent of the time that Baron positively indicates their presence in the field. Although Baron may not be a model of canine accuracy, his record is only one of the factors we consider in the totality of the circumstances calculation. Donnelly does not dispute that Baron received consistent training, that Baron had been examined and considered competent by independent evaluators, that he had been properly certified, that he had been considered reliable by prior courts, and that his accuracy rate exceeded fifty percent. Accordingly, taking into account the totality of the circumstances present at the scene of the accident, Donnelly's behavior and condition, Baron's history and pedigree, and Baron's positive indication of drugs within the vehicle, we conclude that there was a fair probability that Donnelly's vehicle contained drugs. Accordingly, Fitzer had probable cause to search Donnelly's car pursuant to the automobile exception to the warrant requirement. See United States v. Alexander, 448 F.3d 1014, 1017 (8th Cir. 2006), *cert. denied*, 75 USLW 3350 (2007).

## B. Donnelly's Sentence

Donnelly argues that the district court erred in concluding that Donnelly's rehabilitative efforts and other positive characteristics had to be atypical to qualify for a variance and that it failed to give appropriate weight to his rehabilitation.

We review the reasonableness of a defendant's sentence for abuse of discretion. United States v. Haack, 403 F.3d 997, 1003 (8th Cir. 2005), *cert. denied*, 126 S. Ct.

276 (2005). Following <u>United States v. Booker</u>, 543 U.S. 220 (2005), the advisory guidelines must be taken into account by the sentencing court, together with the sentencing factors enumerated in 18 U.S.C. § 3553(a). <u>Id.</u> at 259-60. A sentence within the guidelines range is presumptively reasonable. <u>United States v. Walker</u>, 439 F.3d 890, 892 (8th Cir. 2006). A sentence may be unreasonable if the sentencing court failed to consider a relevant factor that should have received significant weight, gave significant weight to an improper or irrelevant factor, or considered only the appropriate factors but committed a clear error of judgment by imposing a sentence outside of the guidelines range dictated by the facts of the case. <u>Id.</u>

Donnelly's contention that the sentence is unreasonable because the district court failed to give appropriate weight to his rehabilitation is without merit. As the district court noted, Donnelly already received a three-level reduction from within the guidelines in recognition of his post-offense rehabilitation and timely acceptance of responsibility. Sentencing Tr. at 30-31; <u>see also</u> U.S.S.G. § 3E1.1 comment n. 1(g), (h) (specifying post-offense rehabilitative efforts and timely acceptance of responsibility as considerations that may justify a reduction). The district court, applying the 18 U.S.C. § 3553(a) factors, concluded that Donnelly's rehabilitative efforts were not of an extraordinary nature outside the heartland of cases and were already accounted for by the guidelines's recommendations.[5] While a district court has discretion to vary from the advisory guidelines even where a departure would not be appropriate, <u>see</u> <u>United States v. Hadash</u>, 408 F.3d 1080, 1083-84 (8th Cir. 2005), the district court here imposed a presumptively reasonable sentence comporting with the guidelines recommendation, and we see nothing in the record indicating that it applied significant weight to an "improper or irrelevant factor" or a failed to apply appropriate weight "to a relevant factor." <u>See</u> <u>Haack</u>, 403 F.3d at 1004. Accordingly, Donnelly has failed to rebut the presumption of reasonableness attached to his

---

[5]The factor at issue, 18 U.S.C. § 3553(a)(1), requires that the court consider the "nature and circumstances of the offense and the history and characteristics of the defendant. . . ."

sentence.  See United States v. Lincoln,  413 F.3d 716, 718 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 840 (2005).

The judgment is affirmed.

_____