# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3017

_____

United States of America,

           Plaintiff - Appellee,

v.

$231,930.00 in United States Currency,

           Defendant,

Bartosz Kupczyk,

           Claimant - Appellant.

Appeal from the United States
District Court for the
District of Nebraska.

_____

Submitted: March 10, 2010
Filed: August 5, 2010

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

SMITH, Circuit Judge.

Bartosz Kupczyk was stopped for speeding on an interstate in Nebraska, and police seized $231,930 from his car. The government initiated an in rem forfeiture action in district court, and Kupczyk moved to suppress the seized currency. The

district court,[1] adopting the magistrate judge's[2] report and recommendation, found that probable cause existed to stop the car and that Kupczyk consented to the search. On appeal, Kupczyk renews the argument that his Fourth Amendment rights were violated, specifically arguing that the district court erred in denying his motion to suppress by finding that (1) there was probable cause to stop the car; (2) Kupczyk was not illegally seized before the search commenced; and (3) Kupczyk voluntarily consented to the search. We affirm.

## I. *Background*

At approximately 3:30 p.m. on February 4, 2008, Kupczyk traveled westbound in a silver Dodge Charger on Interstate 80 just east of Lincoln, Nebraska. Also traveling westbound at approximately the same location was Seward County, Nebraska Sheriff's Deputy Randy Brown. Deputy Brown was traveling near the speed limit, 75 m.p.h., in a marked patrol vehicle and passed Kupczyk's vehicle.

Deputy Brown testified that when he passed Kupczyk, Kupczyk stared at him for some time and swerved his vehicle so far to the right that Deputy Brown thought it might leave the roadway. Deputy Brown continued his pass and continued westbound. Deputy Brown testified that he did not stop the Dodge Charger at the time of the swerve because they were not in Seward County but that he intended to stop the Dodge if Kupczyk continued to drive erratically.

Approximately eight minutes later, Deputy Brown telephoned Seward County Sheriff's Sergeant Mike Vance and reported that he passed a westbound Dodge Charger being driven by a nervous driver. Deputy Brown continued west to mile

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]The Honorable David L. Piester, United States Magistrate Judge for the District of Nebraska.

marker 388, just inside Seward County, and parked his patrol unit in the median to observe the Dodge Charger and see if Kupczyk continued to drive erratically. When Kupczyk passed with the flow of traffic, Deputy Brown noticed that the Dodge Charger had Illinois license plates. Kupczyk did not appear to be speeding and he was not driving erratically. Deputy Brown stayed at his location. He then heard a radio dispatch that Sergeant Vance had stopped a vehicle with Illinois plates going westbound for speeding. Deputy Brown proceeded to mile marker 379, the reported site of the stop, to assist.

Sergeant Vance testified that he had been operating his radar unit on westbound traffic at approximately mile marker 379 for a short time when he noticed a silver or gray car approximately a mile away approaching him and passing another car. He thought that the gray or silver car was speeding and directed his radar unit to it. The unit displayed that the car was traveling at 83 m.p.h., eight miles over the speed limit at that location. Sergeant Vance testified that the driver, Kupczyk, glanced over at him as he passed. Sergeant Vance "locked in" the speed reading and pulled his patrol unit out into the traffic lanes to stop Kupczyk. Kupczyk kept traveling westward without slowing until he pulled over to the shoulder approximately one mile later.

Sergeant Vance approached the Dodge Charger and requested Kupczyk's driver's license and registration after explaining that he had been stopped for speeding. Kupczyk handed over his license and car rental agreement and remained silent. Sergeant Vance returned to his cruiser to check the documents. When the documents came back clear, Vance wrote a warning citation while still in his police cruiser.

Sergeant Vance then returned to the Dodge Charger and asked Kupczyk to exit his vehicle while Sergeant Vance explained the warning to him. Kupczyk complied. Standing between the two vehicles, Sergeant Vance explained the warning to Kupczyk and gave him back his driver's license and the rental agreement. Reserve Officer Janice Vance—Sergeant Vance's wife—was standing nearby, as was Deputy Brown,

-3-

who had arrived at the scene. All three officers were within a few feet of Kupczyk. Deputy Brown inquired into Kupczyk's travel plans and asked Kupczyk what he had in the car, to which Kupczyk replied that he had a laptop and one piece of luggage.

Following his explanation of the warning citation, Sergeant Vance testified that he said, "You're good to go."[3] Immediately thereafter, however, Sergeant Vance said to Kupczyk, "I'd like to ask you a couple more questions" or "You mind if I ask you a couple more questions?" Kupczyk answered, "Yes you may." Sergeant Vance asked him standard interdiction questions, such as whether he possessed any weapons, drugs, large amounts of United States currency, or anything illegal in the car. Kupczyk answered, "No, I do not" or "No" to each question.

Sergeant Vance testified that he then asked Kupczyk if he could search the vehicle. Kupczyk answered, "If you'd like to. I mean, I'm fine." Sergeant Vance then stated, "If you would, just step back there . . . go ahead and have a seat in the back seat so you can stay warm." Sergeant Vance then directed Kupczyk to the rear of his patrol unit.

The officers began searching the automobile and soon found the $231,930 in United States currency in Kupczyk's bag located in the trunk. Kupczyk made no effort to stop the search at any time during its progress.

Kupczyk filed a motion to suppress all evidence and statements obtained as a result of this traffic stop, claiming Fourth Amendment violations. After conducting a suppression hearing, the magistrate judge recommended the denial of the motion to suppress, finding that probable cause existed to stop Kupczyk's car for speeding and that Kupczyk consented to the subsequent search after completion of the stop.

---

[3]The magistrate judge reviewed the tape of the stop and concluded that Sergeant Vance actually said, "You're good."

The district court adopted the magistrate judge's report and recommendation. On August 20, 2009, the district court entered a conditional final order of forfeiture, pending Kupczyk's appeal of the district court's denial of his motion to suppress.

## II. *Discussion*

On appeal, Kupczyk argues that the district court erred in denying his motion to suppress by finding that (1) there was probable cause to stop the car; (2) Kupczyk was not illegally seized prior to the search of the car; and (3) Kupczyk voluntarily consented to a search of the car.

### A. *Probable Cause*

Kupczyk relies primarily upon the expert testimony of Dr. Ted Sokol to support the argument that the officers lacked probable cause. Dr. Sokol, an accident reconstruction specialist, made measurements and calculations to determine Kupczyk's speed at the time of the stop by viewing the police video. Kupczyk contends that the district court erroneously rejected Dr. Sokol's testimony for failure to supply the government notice, a violation of Federal Rule of Civil Procedure 26(a)(2). Kupczyk submits that Dr. Sokol's testimony constitutes impeachment evidence, which is outside the purview of Rule 26(a)(2). Kupczyk also argues that the district court, by not accepting Dr. Sokol's testimony, erroneously concluded that Sergeant Vance's testimony was not impeached.

The government responds that Kupczyk offered Dr. Sokol's testimony only as rebuttal evidence, not for impeachment purposes. The government thus contends that Kupczyk offered Dr. Sokol's testimony not to show that Sergeant Vance was not truthful but instead to show that Dr. Sokol's superior evidence indicates that Kupcyzk drove slower than the officer's instrument recorded. The government maintains that Kupcyzk sought to refute Sergeant Vance's testimony that Kupczyk was driving 83 m.p.h., which is rebuttal evidence, not impeachment. However, under this view, the government asserts that whether Dr. Sokol's testimony was for impeachment purposes

or rebuttal evidence is immaterial because his testimony does not impeach Vance's testimony about Kupczyk's speed, which was above the legal limit.

When reviewing an order denying a motion to suppress under the Fourth Amendment, as here, "[w]e review the district court's factual findings under the clearly erroneous standard and its conclusion as to whether a violation of the Fourth Amendment has occurred *de novo*." *United States v. Lebrun*, 261 F.3d 731, 733 (8th Cir. 2001). We will affirm the denial of a suppression motion unless we find "that the decision is unsupported by the evidence, based on an erroneous view of the law, or the Court is left with a firm conviction that a mistake has been made." *United States v. Madrid*, 152 F.3d 1034, 1037 (8th Cir. 1998) (internal quotations and citation omitted).

At the outset, we note that Dr. Sokol actually testified—the district court simply chose not to credit the testimony as Kupczyk would have preferred. Dr. Sokol testified that he had visited the site of the stop and had performed various measurements and calculations. Dr. Sokol concluded that Kupczyk's vehicle, at the time it passed Sergeant Vance's vehicle parked in the crossover on I-80, was traveling 77.6 m.p.h. Dr. Sokol had no measurements for the speed of the vehicle before it reached the point in the highway opposite the crossover, but he relied on the testimony of Sergeant Vance that the vehicle had not slowed until it pulled over onto the shoulder of the roadway.

An officer must have an objective and reasonable belief that he has observed a traffic offense (or other crime) to legally stop a vehicle. *Scott v. United States*, 436 U.S. 128, 137 (1978); *see also United States v. Woodall*, 938 F.2d 834, 837 (8th Cir. 1991). Sergeant Vance testified that he had been certified in the use of the type of radar machine used. He testified that he tested the radar machine at the start of his shift that day and determined that it was functioning properly and provided proper documentation. Sergeant Vance then testified that his radar unit reported Kupczyk

traveling at 83 m.p.h. This gave Sergeant Vance an "objectively . . . reasonable basis for believing that [Kupczyk] ha[d] breached a traffic law," which gave Sergeant Vance "probable cause to conduct a traffic stop." *United States v. Coney*, 456 F.3d 850, 856 (8th Cir. 2006) (internal quotations and citation omitted).

"It is well settled that any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Martinez*, 358 F.3d 1005, 1009 (8th Cir. 2004) (internal quotations, alteration, and citation omitted). An officer's subjective suspicions of other illegal conduct do not invalidate that proper probable cause. *Whren v. United States*, 517 U.S. 806, 810–13 (1996) (holding that traffic stops based on probable cause are valid even if the officer stopping the vehicle suspects that the occupant is engaged in other illegal activity).

Kupczyk's evidence did not prove that he was *not* speeding; instead he offered only evidence that Sergeant Vance was wrong about how much Kupczyk exceeded the 75 m.p.h.-speed limit. Dr. Sokol, Kupczyk's own witness, testified Kupczyk was traveling 77.6 m.p.h. when he passed Sergeant Vance. Even assuming Dr. Sokol was correct, a traffic violation occurred, creating probable cause. The district court chose not to credit Dr. Sokol's testimony and did credit Sergeant Vance's testimony. This is not clear error. "The district court's credibility determinations are entitled to great deference." *United States v. Lopez*, 564 F.3d 1001, 1003 (8th Cir. 2009) (internal quotations and citation omitted).

## B. *Illegal Seizure*

Kupczyk next argues that if there was probable cause to make the stop, the officers nonetheless violated his Fourth Amendment rights because they illegally seized him before he consented to the search of his car. Kupczyk asserts that this illegal seizure taints any subsequent consent, even if that consent could otherwise be deemed to be "voluntary."

The government responds that Kupczyk freely consented to the search and that the three officers present made no threats or promises, never touched Kupczyk, did not prevent him from leaving, and always used a conversational tone of voice in obtaining voluntary consent.

"The ultimate determination of whether a seizure occurred is a question of law which we consider de novo." *United States v. White*, 81 F.3d 775, 779 (8th Cir. 1996). "It is well established that not all personal contacts between law enforcement officers and citizens constitute 'seizures' for Fourth Amendment purposes." *Id*. (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

> A seizure does not occur simply because a law enforcement officer approaches an individual and asks a few questions or requests permission to search an area—even if the officer has no reason to suspect the individual is involved in criminal activity—provided the officer does not indicate that compliance with his request is required.

*Id*. (citing *Florida v. Bostick*, 501 U.S. 429, 434–35 (1991)).

If a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual and implicates no Fourth Amendment interest. *Bostick*, 501 U.S. at 434 (internal quotations and citation omitted). During a consensual encounter, "[t]he person approached . . . need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way." *Florida v. Royer*, 460 U.S. 491, 497–98 (1983) (plurality opinion).

Kupczyk contends that he was seized *before* Sergeant Vance requested consent to search his car. Kupczyk asks us to look at the objective actions of Sergeant Vance and his deputies, rather than Kupczyk's words giving consent. In support, Kupczyk relies almost exclusively on the unpublished district court decision of *United States v. Christy*, No. 8:07CR238, 2008 WL 753888 (D. Neb. March 19, 2008)

(unpublished). His reliance is misplaced. In *White*, a case involving a similar encounter with several police officers, we stated that

> [a]lthough there is no litmus test for determining when an encounter becomes a seizure, we have noted that circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's requests might be compelled.

81 F.3d at 779 (internal quotations and citations omitted).

As in *White*, the officers detaining Kupczyk displayed no weapons during the exchange, and the tone of the exchange was cooperative. *Id*. Though three officers were present, only one had the primary contact with Kupczyk, as with the defendant in *White*. *Id*. Again, similar to the situation in *White*, at the time the officer asked to search Kupczyk's car, Kupczyk could have lawfully proceeded on his journey. *Id*. We conclude, therefore, as we did in *White*, that the trooper's "request to search came during the course of a consensual encounter and was permissible with or without reasonable suspicion." *Id*.

*Christy* is not only *not* controlling authority, but it is not even particularly persuasive given its very different facts. In *Christy*, it was a full 11 minutes before the officer ran the defendant's license and registration (something that happened almost immediately in this case). 2008 WL 753888, at * 3. Then, at the 13-minute mark, the officer gave the defendant a warning. *Id*. The officers continued to question the defendant, and it was nearly 27 minutes before the officers requested permission to search the car. *Id*. Here, Sergeant Vance requested consent to search the car 15 seconds after returning Kupczyk's license.

Kupczyk was ordered out of his vehicle and told to stand on the side of the road while Sergeant Vance completed his duties. Sergeant Vance did not ask Kupczyk to exit his vehicle until after Sergeant Vance ran Kupczyk's license and registration and had completed a warning citation. Sergeant Vance then went back to Kupczyk's vehicle and asked him to step out and come to the area between Kupczyk's vehicle and Sergeant Vance's patrol car. There, Sergeant Vance explained the warning citation to Kupczyk. "An officer making a traffic stop does not violate the Fourth Amendment by asking the driver his destination and purpose, checking the license and registration, or requesting the driver to step over to the patrol car." *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002). These facts do not show that Sergeant Vance unconstitutionally extended the legal traffic stop.

Also, the presence of three officers, alone, does not make the encounter a seizure, and Sergeant Vance had no duty to tell Kupczyk that he could deny the request to search. "There is no *per se* requirement that an officer inform a citizen of his right to refuse consent, and there is no presumption that consent is invalid where given without an explicit notification of the right to refuse." *United States v. Vera*, 457 F.3d 831, 835 (8th Cir. 2006).

## C. *Voluntary Consent*

Finally, Kupczyk argues that if there was probable cause, and if he was not illegally seized, that he still did not give consent to have his car searched. Kupczyk acknowledges that he told Sergeant Vance that he could search the car, but he maintains that the officers coerced his consent.

The government responds that the totality of the circumstances show that Kupczyk gave knowing and intelligent consent to allow the officers to search his car because the encounter was brief, occurred on a public interstate, Kupczyk gave direct and responsive answers to Sergeant Vance, and Sergeant Vance did not arrest Kupczyk or make any threats to him. Also, Kupczyk, never objected to the search.

"We review the district court's determination of whether a voluntary consent to a search was given under the clearly erroneous standard." *United States v. Galvan-Muro*, 141 F.3d 904, 907 (8th Cir. 1998). The government must show from the record that Kupczyk gave his consent. "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. N.C.*, 391 U.S. 543, 548 (1968). Consent is voluntary if it was "the product of an essentially free and unconstrained choice by its maker[,]" *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973), rather than "the product of duress or coercion, express or implied." *Id*. at 227. The voluntariness of the defendant's consent is a "question of fact to be determined from the totality of all the circumstances." *Id*.

In examining the environment in which consent was given, we ask whether the person who consented:

> (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; (6) either objected to the search or stood by silently while the search occurred.

*United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990) (internal citations omitted).

After Sergeant Vance asked if he could search Kupczyk's vehicle, Kupczyk responded, "If you'd like to. I mean, I'm fine." Kupczyk concedes that he gave legally sufficient consent; his argument is that the consent was not voluntary. Sergeant Vance detained Kupczyk only long enough to perform his traffic stop and did not ask repetitive, unnecessary questions. Police obtained Kupczyk's consent in the daylight on the shoulder of the interstate. The video of the traffic stop demonstrates Sergeant

-11-

Vance's tone was conversational, and he and the other officers never threatened Kupczyk or brandished weapons. Kupczyk was not in custody or under arrest when he gave his consent. Kupczyk's tone was cooperative and he gave answers without hesitation. Kupczyk made no effort to limit or stop the search once it began.

Considering the totality of the circumstances, we hold that Kupczyk, a competent adult, consented to the search of his car after a valid traffic stop.

### III. *Conclusion*

We affirm the district court's denial of Kupczyk's motion to suppress.

_____