# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3047
No. 06-3068

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellant/ | * | |
| Cross Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Bradley Lee Winters, | * | |
| | * | |
| Defendant - Appellee/ | * | |
| Cross Appellant. | * | |

_____

Submitted:  February 13, 2007
Filed:  July 27, 2007

_____

Before LOKEN, Chief Judge, SMITH and GRUENDER, Circuit Judges.

_____

LOKEN, Chief Judge.

After methamphetamine was found on the person of Bradley Lee Winters and in the car he was driving, Winters was convicted in Iowa state court of drug and tax stamp offenses. The Supreme Court of Iowa overturned the convictions, finding insufficient cause for pretrial delays and thus a denial of Winters's right to a speedy trial. State v. Winters, 690 N.W.2d 903 (Iowa 2005). Winters was then indicted on federal drug charges arising out of the same incident. After a hearing, the district court denied Winters's motion to dismiss these charges on double jeopardy grounds

but granted his motion to suppress the drugs and other evidence seized from Winters and his vehicle.  The government appeals the interlocutory suppression order, see 18 U.S.C. § 3731, and Winters cross appeals the denial of his motion to dismiss.  We consolidated the appeals.  Reviewing the district court's findings of fact for clear error and its conclusions of law *de novo*, we affirm the denial of Winters's motion to dismiss, reverse the district court's suppression order, and remand.

## I. The Double Jeopardy Issue

Because Iowa and the United States are separate sovereigns, the Fifth Amendment's Double Jeopardy Clause does not bar a federal prosecution for the same acts that gave rise to a prior prosecution by the State of Iowa.  Abbate v. United States, 359 U.S. 187, 194-95 (1959).  Winters argues that this case falls under the "sham" exception to this dual sovereignty principle suggested in dicta in Bartkus v. Illinois, 359 U.S. 121, 123-24 (1959), because his federal prosecution is both vindictive -- punishing Winters for exercising his right to a speedy trial under Iowa law -- and selective, in that his state court co-defendants (who waived their speedy trial rights, were convicted, and are serving state sentences) were not similarly charged with federal offenses.  These same arguments were rejected in United States v. Leathers, 354 F.3d 955 (8th Cir.), cert. denied, 543 U.S. 844 (2004).  Our decision in Leathers is controlling.  Accordingly, the district court's orders of August 4, 2006, denying Winters's motion to dismiss are affirmed.

## II. Suppression Issues

On August 28, 2002, northern Iowa law enforcement officer Logan Wernet advised the Iowa Division of Narcotics Enforcement that Winters and his mother would drive a 1991 red Pontiac Firebird, license number 152-LAA, from Mason City to the Des Moines area, where they would meet with an attorney in West Des Moines and then pick up methamphetamine in Des Moines.  Both Winters and his mother had

prior felony drug convictions. Agent Steven DeJoode and officer Kenneth O'Brien located the Firebird parked outside the attorney's office building. When Winters and his mother left the building and drove away, DeJoode and O'Brien followed them to a residence on the east side of Des Moines. A vehicle check revealed that two other vehicles parked at this residence -- a blue Chevy Celebrity and a red Chevy pickup -- were registered to individuals with prior drug arrests or convictions.

Several hours later, Winters drove away in the Firebird. His mother and several others drove away in the Celebrity. Both vehicles were followed to an apartment complex in southeast Des Moines, where the red Chevy pickup was also parked. Winters entered one apartment building, left after five minutes, entered a second building, and left after about nine minutes. He then drove away in the Firebird while his mother drove away with others in the Celebrity. About one mile from a major freeway interchange, Winters's mother got out of the Celebrity and into the Firebird with Winters. The Firebird proceeded north on I-35, followed by Iowa State Patrol Trooper Mark Griggs. At this time, Agent DeJoode directed Trooper Griggs to stop the Firebird, either for a traffic violation or for a Terry stop.

Following the stop, Griggs observed Winters and his mother move as if to place something in the front seat console. Griggs approached Winters, noticing his dilated pupils, body tremors, and a large lump in his pocket. When Winters declined Griggs's request for a pat-down, Griggs placed Winters in the patrol car and told him to keep his hands visible. When Winters failed to do so, Agent DeJoode, who had arrived on the scene, handcuffed Winters for security reasons. A drug detection dog was summoned and arrived 31 minutes after the initial stop. The dog detected narcotics in Winters's vehicle and was then led around the patrol car, where Winters was sitting. The dog indicated (specifically identified) the odor of narcotics emanating from Winters. Agent DeJoode searched Winters, discovering a plastic bag with two grams of methamphetamine, other bags containing drug residue, and what appeared to be notes of drug activity. The officers then searched the Firebird, uncovering a large

amount of cash under the driver's seat, one-half pound of methamphetamine under the passenger's seat, and other evidence of drug activity.

**A.** The district court granted Winters's motion to suppress this evidence on the ground that stopping the Firebird violated his Fourth Amendment rights. First, the court concluded that the alleged traffic violation was inconsistent with the Supreme Court of Iowa's analysis of an Iowa traffic statute in State v. Tague, 676 N.W.2d 197 (Iowa 2004). Second, stating it was a "close question," the court concluded that the officers lacked the reasonable suspicion of on-going criminal activity that justifies a Terry stop. See Terry v. Ohio, 392 U.S. 1, 20-22 (1968). The government challenges both conclusions on appeal. We conclude that the officers had reasonable suspicion justifying the Terry stop. Accordingly, we need not reach the issue of whether the officers made a valid traffic stop. See generally United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109-11 (8th Cir. 2007), applying the same traffic statute.

Under Terry, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989). This includes the right to "briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." United States v. Hensley, 469 U.S. 221, 226 (1985). We review the district court's ultimate conclusion as to whether reasonable suspicion existed *de novo*. Ornelas v. United States, 517 U.S. 690 (1996). When a team of law enforcement officers is involved in an investigation, the issue is whether all the information known to the team provided "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the investigative stop. United States v. Robinson, 119 F.3d 663, 666-67 (8th Cir. 1997) (quotation omitted). In evaluating the validity of a stop, we must consider "the totality of the circumstances -- the whole picture." Sokolow, 490 U.S. at 8 (quotation omitted).

-4-

Here, the collective knowledge started with Officer Wernet's alert that Winters and his mother would drive a specific vehicle with a specific license plate from northern Iowa to a specific attorney's office in West Des Moines and would then pick up methamphetamine in the Des Moines area. Iowa drug enforcement agents then determined that Winters and his mother had prior felony convictions and located Winters's Firebird parked outside the attorney's office. At this point, Officer Wernet's information was significantly corroborated. Even when investigating tips from anonymous citizens, which are inherently less reliable than information provided by a sister law enforcement agency, the police may rely upon corroborating details that are "as consistent with innocent conduct as with illegal activity." United States v. Olson, 262 F.3d 795, 798 (8th Cir. 2001) (quotation omitted).[1]

After locating the Firebird, the agents observed Winters leave the office building with his mother and drive away. They followed the Firebird to a residence in Des Moines, where two other vehicles registered to prior drug offenders were parked, and then to an apartment complex, where Winters made a series of brief visits consistent with drug trafficking. Agent DeJoode and Officer O'Brien, both experienced drug crime investigators, testified that, based on their training and experience, Winters's actions were "consistent with what drug dealers do." Thus, this activity tended to corroborate Officer Wernet's information that Winters and his mother would pick up methamphetamine in Des Moines.

In summary, when Agent DeJoode directed Trooper Griggs to stop the Firebird, DeJoode was acting upon detailed information provided by Officer Wernet that was substantially corroborated by what the agents observed in Des Moines, which included

---

[1]At the suppression hearing and on appeal, government counsel refer to the information provided by Officer Wernet as an "anonymous tip," but no testimony at the suppression hearing identified the source of Wernet's information. We conclude that the agents and officers in Des Moines had reasonable suspicion to stop the Firebird even if Wernet simply passed along a citizen's anonymous tip.

apparent meetings with prior drug offenders followed by brief stops consistent with drug sales, reinforced by the fact that Winters and his mother were prior drug offenders. Viewing these circumstances in their totality from the objective perspective of experienced narcotics investigators, we conclude that DeJoode acted on "specific and articulable facts" that gave him reasonable suspicion that Winters and his mother were engaged in on-going illegal drug activity and that evidence of that activity would be found in the Firebird. See United States v. Cornelius, 391 F.3d 965, 967 (8th Cir. 2004) (past illegal drug activity relevant in determining reasonable suspicion); Robinson, 119 F.3d at 667 (prior drug conviction, reliable information of a recent drug purchase, and observing actions consistent with drug dealing provided reasonable suspicion). Therefore, the stop was constitutionally valid. "Factors consistent with innocent travel, when taken together, can give rise to reasonable suspicion, even though some travelers exhibiting those factors will be innocent." United States v. Carpenter, 462 F.3d 981, 986 (8th Cir. 2006), cert. denied, 127 S. Ct. 2029 (2007).

**B.** After the scheduled briefing, we granted Winters's motion for leave to file a pro se supplemental brief addressing suppression issues. In that brief, Winters argues that, even if the initial stop of the Firebird was valid, his motion to suppress should be granted because the agents and officers violated his Fourth Amendment rights by (1) "blocking in" the Firebird prior to the stop without probable cause; (2) handcuffing Winters without probable cause; (3) unreasonably delaying his detention before a drug dog arrived; (4) searching his vehicle based upon a dog "alert" that did not provide probable cause; (5) using the dog to search his person without probable cause; and (6) searching his pockets and removing items known not to be weapons. The government did not file a supplemental brief responding to these contentions, despite having ample time to do so. These contentions were not considered by the district court, given its decision that the initial stop was invalid, and the record does not make it clear to us which of these issues were properly raised and factually developed in the district court. In these circumstances, we decline to consider them

in the first instance. We leave it to the district court on remand to determine whether some or all of these issues have been properly preserved and therefore warrant further consideration, and perhaps further factual inquiry, by that court.

For the foregoing reasons, the district court's denial of Winters's motion to dismiss is affirmed, the grant of his motion to suppress is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

_____