# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1740

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Bradley Lee Winters, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: January 15, 2010
Filed: April 6, 2010

_____

Before LOKEN, Chief Judge,[*] JOHN R. GIBSON and WOLLMAN, Circuit Judges.

_____

LOKEN, Chief Judge.

After Bradley Lee Winters was indicted on federal drug charges, he filed a motion to suppress the methamphetamine and other evidence seized during a stop of his vehicle. The district court granted the motion after an evidentiary hearing, concluding that the initial stop was not a valid traffic or <u>Terry</u> stop. The government appealed. We reversed, concluding it was a valid <u>Terry</u> stop, and remanded for further proceedings, declining to consider additional Fourth Amendment issues raised by

_____

[*] The Honorable James B. Loken stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2010. He has been succeeded by the Honorable William Jay Riley.

Winters in *pro se* supplemental briefs. United States v. Winters, 491 F.3d 918, 923 (8th Cir. 2007). On remand, the district court denied renewed motions to suppress. A jury convicted Winters of conspiracy to distribute and possession with intent to distribute methamphetamine. The district court[1] sentenced him to 360 months in prison. Winters appeals, challenging various Fourth Amendment rulings and the denial of his motion to dismiss based on an alleged violation of the Interstate Agreement on Detainers Act. We affirm.

## I. Fourth Amendment Issues.

**A. Validity of the Initial Stop.** In our prior decision, we held that the initial stop of Winters's vehicle was a valid Terry stop because the collective knowledge of the investigating law enforcement officers gave rise to reasonable suspicion that criminal drug trafficking activity was afoot. That knowledge included an alert from northern Iowa police officer Logan Wernet "that Winters and his mother would drive a specific vehicle with a specific license plate from northern Iowa to a specific attorney's office in West Des Moines and would then pick up methamphetamine"; a records check revealing that Winters and his mother had prior felony convictions; locating Winters's vehicle parked outside the attorney's office; and observing Winters make a series of visits consistent with drug trafficking. Winters, 491 F.3d at 922. As the district court recognized, our mandate was binding law of the case on remand. Absent a change in the governing law, when a case is remanded for further proceedings, the appellate mandate must be followed "unless a party introduces substantially different evidence, or the prior decision is clearly erroneous and works a manifest injustice." United States v. Bartsh, 69 F.3d 864, 866 (8th Cir. 1995) (quotation omitted); see generally Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 4478.3, at 746-48 & n.25 (2d ed. 2002).

---

[1]The Honorable Robert W. Pratt, Chief Judge of the United States District Court for the Southern District of Iowa.

On remand, Winters filed a *pro se* renewed motion to suppress arguing that newly discovered evidence established the invalidity of the initial stop. Specifically, he alleged that a contemporaneous written report filed by Officer Wernet but not received by Winters until after the suppression hearing established that Special Agent Paul Feddersen of the Iowa Division of Narcotics Enforcement lied when he testified at the suppression hearing that Wernet orally reported the license plate number of Winters's vehicle and the attorney he would visit in Des Moines. Chief Judge Pratt denied this motion, concluding that Officer Wernet's written report did not support a finding that Feddersen lied because the report "is not substantially different from the testimony at the suppression hearing."[2] We agree.

Winters correctly notes that our decision upholding the Terry stop was based in part on the specificity of the information Wernet provided to Division of Narcotics Enforcement officers, as described at the suppression hearing by Special Agent Feddersen. Winters, 491 F.3d at 922. Officer Wernet's written report stated only that he received information from a confidential informant that Winters and his mother were making a trip to Des Moines in Winters's 1991 Firebird to purchase a large quantity of methamphetamine, and that Wernet alerted the Iowa Department of Narcotics Enforcement to watch for this vehicle. But the absence of additional details in Wernet's written report -- the license plate number and the attorney Winters would visit -- is not inconsistent with Agent Feddersen's testimony and certainly does not establish that Feddersen lied at the suppression hearing. Moreover, even if the informant only provided the type of vehicle Winters was driving, and Feddersen obtained the license number through a records check, that would not alter our Terry stop analysis. Therefore, assuming Wernet's report qualified as newly discovered evidence for these purposes, it fell far short of being the kind of substantial evidence

---

[2]Chief Judge Pratt adopted the report and recommendation of the Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa.

that would authorize the district court to disregard our law of the case. Thus, the court did not err in denying the *pro se* renewed motion to suppress on this ground.

**B. Post-Stop Fourth Amendment Issues.** Our first opinion summarized in some detail the evidence introduced at the suppression hearing regarding what happened after the initial stop of Winters's vehicle:

> Following the stop, [Trooper] Griggs observed Winters and his mother move as if to place something in the front seat console. Griggs approached Winters, noticing his dilated pupils, body tremors, and a large lump in his pocket. When Winters declined Griggs's request for a pat-down, Griggs placed Winters in the patrol car and told him to keep his hands visible. When Winters failed to do so, Agent DeJoode, who had arrived on the scene, handcuffed Winters for security reasons. A drug detection dog was summoned and arrived 31 minutes after the initial stop. The dog detected narcotics in Winters's vehicle and was then led around the patrol car, where Winters was sitting. The dog indicated (specifically identified) the odor of narcotics emanating from Winters. Agent DeJoode searched Winters, discovering a plastic bag with two grams of methamphetamine, other bags containing drug residue, and what appeared to be notes of drug activity. The officers then searched the Firebird, uncovering a large amount of cash under the driver's seat, one-half pound of methamphetamine under the passenger's seat, and other evidence of drug activity.

491 F.3d at 921. We declined to consider Fourth Amendment issues relating to these post-stop actions first raised by Winters in a *pro se* supplemental appeal brief, leaving those issues for consideration by the district court on remand. Id. at 922-23.

On remand, Winters initially filed a motion to suppress raising the post-stop issues we declined to consider in the prior appeal arguing, as relevant here, that the search of his person and his vehicle were not supported by probable cause. Winters urged a further hearing because additional testimony was needed to "fully address"

drug dog Bobby's indication of drugs on Winters's person when Winters was sitting in a patrol car that had marijuana in its trunk from a prior arrest. The government submitted a lengthy memorandum arguing that a dog sniff on the exterior of the patrol car was not a warrantless search of Winters's person and established probable cause for his subsequent arrest and search. The district court[3] denied the motion without a further hearing, concluding based on the valid <u>Terry</u> stop, the post-stop evidence received at the suppression hearing, and the government's memorandum that no action taken by law enforcement officers after the initial stop violated Winters's Fourth Amendment rights. Winters then filed a *pro se* renewed motion to suppress. After the case was reassigned, Chief Judge Pratt denied both the renewed motion to suppress and Winters's post-trial motion for acquittal, mistrial, or a new trial on these grounds. On appeal, Winters launches three attacks on these rulings.

**1.** First, Winters argues the district court erred in concluding that the search of Winters's person and vehicle were supported by probable cause because the drug dog was not reliable; alternatively, the court abused its discretion in not holding a hearing on this issue. Winters concedes, as he must, that an alert or indication by a properly trained and reliable drug dog provides probable cause for the arrest and search of a person or for the search of a vehicle. <u>See</u> <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 110-11 (1980) (search incident to arrest); <u>United States v. Hogan</u>, 539 F.3d 916, 921 (8th Cir. 2008); <u>United States v. Olivera-Mendez</u>, 484 F.3d 505, 512 (8th Cir. 2007); <u>United States v. Sundby</u>, 186 F.3d 873, 875-76 (8th Cir. 1999); <u>United States v. Carrazco</u>, 91 F.3d 65, 67 (8th Cir. 1996).

At the suppression hearing, the government introduced videotapes recording the dog's handler, Trooper Tim Baker, walking Bobby around Winters's Firebird and the patrol car. Bobby generally alerted to the Firebird and then specifically indicated

---

[3]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

outside the passenger door of the patrol car, where Winters was sitting. Baker explained the training he and Bobby had received and described the video of the dog's alerts. On cross examination, Baker admitted that Bobby was lethargic and not acting normally that day and needed treatment the following day to remove a pocket of blood from his head. Baker also admitted that Bobby started to alert on marijuana in the trunk of Trooper Griggs's patrol car before being directed to the passenger door, where he positively indicated. Focusing on this testimony, Winters argues that the district court made no express findings about the dog's training and reliability and failed to grant a further hearing on these issues.

A drug detection dog is considered reliable when it has been "trained and certified to detect drugs." Olivera-Mendez, 484 F.3d at 512 (quotation omitted). Contrary evidence "that may detract from the reliability of the dog's performance properly goes to the 'credibility' of the dog," a finding we review for clear error. United States v. Diaz, 25 F.3d 392, 394 (6th Cir. 1994). Here, the issue of Bobby's training and reliability was expressly addressed at the suppression hearing. After our remand, Winters's request for an additional hearing was not supported by a specific showing of what evidence he would present or develop at that hearing. Thus, the issue is whether the record at the initial hearing adequately supported the district court's probable cause ruling. Trooper Baker testified to Bobby's training, certification, and more than two years experience working with Baker on some 300 "deployments." Judge Vietor viewed the video and questioned Baker about the dog's behavior. Defense counsel elicited on cross examination that Baker could see Bobby was not at his best that day. Judge Vietor did not clearly err or abuse his discretion in concluding, on this evidentiary record, that Bobby was sufficiently trained and reliable to credit the dog's alerts.

Moreover, the ultimate issue was probable cause to arrest Winters and search his person and car. Even if a drug dog's "performance record raises questions about his reliability" -- and here there was no evidence Bobby had performed unreliably in

the past -- the issue is whether "the totality of the circumstances present at the scene" provided probable cause to search. United States v. Donnelly, 475 F.3d 946, 955 (8th Cir.), cert. denied, 551 U.S. 1123 (2007). Acting on a detailed tip from Officer Wernet, the police officers corroborated several details and observed Winters acting earlier that day in a manner consistent with drug trafficking. After the stop but before Bobby's deployment, they observed Winters's body tremors, dilated pupils, and a strong "chemical" odor; furtive movements by Winters and his mother; and Winters refused to keep his hands in view. These circumstances, when added to Bobby's alerts, clearly support the district court's ruling that the officers had probable cause to conduct the post-sniff search of Winters's person incident to his arrest, without the need for a further hearing on the issue of Bobby's training and reliability.

The search of Winters's car occurred after Bobby's general alert on that vehicle and after the arrest of Winters and discovery of methamphetamine on his person. When a vehicle's occupant has been lawfully arrested, the vehicle may be searched without a warrant incident to the arrest "when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." Arizona v. Gant, 129 S. Ct. 1710, 1719 (2009) (quotation omitted). Thus, the search of the vehicle was constitutionally reasonable for two reasons: the totality of the circumstances including Bobby's general alert provided probable cause to search, and there was reason to believe that evidence of the crime for which Winters was arrested might be found.

**2.** After Judge Vietor denied the post-remand motion to suppress, Winters filed a series of *pro se* motions, new counsel was appointed, and counsel filed a renewed motion requesting "an opportunity to present expert testimony on the issue of whether the 'drug dog' alerted and the reliability of this particular canine." An attached *pro se* motion argued that Bobby's alert on Winters's car did not provide probable cause to search because the dog did not "positively indicate the presence of a controlled substance like he's been trained to do." At an argument hearing, defense counsel argued that "the whole interplay of whether the dog alerted or indicated and the

massive tumor on the dog's head . . . gets little play in the suppression hearing." Counsel said he could "make an offer of proof on more detail" but did not do so.

Magistrate Judge Walters issued a Report and Recommendation that this request be denied because cross-examination of the dog handler at the suppression hearing put the credibility of the dog's alert before the Court, and "[w]hether expert testimony would add anything is speculative." Chief Judge Pratt agreed with this recommendation and denied the request:

> [C]ross-examination during the suppression hearing brought out that the dog was not acting normal, and that it was later found to have a blood clot in its head. Judge Vietor was thus aware of the questions about the dog's reliability, but found no Fourth Amendment violation related to it. Expert testimony would only leave the Court with the same question of reliability that Judge Vietor faced concerning the alerts on the Defendant's vehicle and the indication on the door of the car where the Defendant was seated, and the Court sees no reason to disturb [its prior] determination in this regard.

On appeal, Winters argues the court abused its discretion in denying his motion for appointment of a drug dog expert who "adds valuable science to the question of reliability inherent in the Fourth Amendment issues."

We have no difficulty concluding that the district court did not abuse its discretion in denying this request. First, the request was untimely. The cross examination of dog handler Baker at the suppression hearing established that the defense was well aware of the reliability issue. Expert assistance should have been sought at that time. Second, the request was made in a renewed motion to suppress, seeking to reopen a reliability issue that was before the court at the initial hearing. Yet Winters made no specific showing that additional evidence on this issue would likely result in a different ruling. In other words, the untimely request to reopen was entirely speculative. Third, as we have explained, the ultimate Fourth Amendment issue was

probable cause to search Winters's person and vehicle. The reliability of Bobby's alert and positive indication were relevant to, but not dispositive of, that issue. Even if a defense expert cast doubt on the reliability of Bobby's alerts, there was little if any likelihood this would undermine the district court's probable cause rulings. See Donnelly, 475 F.3d at 955 (though drug dog only fifty-four percent accurate, totality of circumstances provided probable cause). A district court does not abuse its discretion in denying a requested expert unless the defendant has demonstrated "a reasonable probability that the requested expert would aid in his defense." United States v. Ross, 210 F.3d 916, 921 (8th Cir.), cert. denied, 531 U.S. 969 (2000).

**3.** After the adverse jury verdict, Winters moved for judgment of acquittal or a new trial on various grounds. One ground was that the evidence presented at trial relating to Bobby's alerts "showed conclusively that no basis in fact existed to predicate a finding that the dog alert could be utilized in the probable cause matrix to justify post-stop searches." In support, Winters submitted the report of a drug dog expert, Steven Nicely, opining that a review of Trooper Baker's testimony at the suppression hearing "leads to the conclusion that Trooper Baker is not a well-trained detector dog handler, and Bobby is not a well-trained drug detector dog," and therefore Bobby "is an unreliable drug or narcotic detector dog." Correctly stating the rigorous standard of review, Chief Judge Pratt denied the motion, finding no reason to conclude that Winters's motion to suppress was improvidently denied. On appeal, Winters argues the district court erred by denying his motion for a new trial based on this newly discovered evidence.

We review the denial of a motion for new trial based on newly discovered evidence for clear abuse of discretion. To warrant a new trial on this ground, Winters must prove:

> (1) the evidence must have been unknown or unavailable to the defendant at the time of trial; (2) the defendant must have been duly

diligent in attempting to uncover it; (3) the newly discovered evidence must be material; and (4) the newly discovered evidence must be such that its emergence probably will result in an acquittal upon retrial.

United States v. Baker, 479 F.3d 574, 577 (8th Cir. 2007) (quotation omitted). Winters fails to satisfy this rigorous standard for many reasons. First, an expert's analysis of the training of Trooper Baker and drug dog Bobby, and the credibility of the alerts in question, was evidence available to the defense long before trial. Second, Winters and his attorneys were far from diligent in pursuing these issues. Third, as we have explained, though relevant it is doubtful that evidence attacking Bobby's reliability was material to the ultimate issue of probable cause. Fourth, Winters fails to cite a case in which evidence casting doubt on a pretrial suppression ruling resulted in the granting of a new *trial*. Even if such relief would be appropriate in an extreme case, there is virtually no likelihood that the emergence of this evidence would result in an acquittal upon retrial. Cf. United States v. VanMaanen, 547 F.2d 50, 53 (8th Cir. 1976) (rejecting argument that newly discovered evidence would result in the exclusion of incriminating evidence resulting in the defendant being acquitted on retrial). There was no abuse of discretion.

## II. The Interstate Agreement on Detainers Act (IADA) Issue.

Shortly before trial, Winters filed a *pro se* motion to dismiss the indictment on the ground that his trial was not conducted within 120 days of his arrival in the receiving jurisdiction, as the IADA requires, and no continuances had been granted for good cause shown. See 18 U.S.C. App. 2, § 2 art. IV(c). The IADA contains "tolling provisions for certain events." United States v. McKay, 431 F.3d 1085, 1091 (8th Cir. 2005), cert. denied, 547 U.S. 1174 & 549 U.S. 828 (2006). Magistrate Judge Walters recommended denying this motion, concluding that the IADA "speedy trial clock" had been tolled by motions for continuances and by Winters's motion to suppress, and specifically noting that the clock "remained stopped during the

[government's] appeal" of the initial suppression order.  Winters filed *pro se* objections, arguing "there has been no good cause shown in open court." Chief Judge Pratt overruled the objections, concluding that Winters's "counsel acceded to or requested the continuances made in this case, as set out in the timeline contained in the report and recommendations."

On appeal, Winters makes an entirely new argument -- that the district court improperly excluded the period during which the government's interlocutory appeal of the district court's suppression order was pending in this court.  We decline to consider, or review only for plain error, issues raised for the first time on appeal, particularly issues forfeited in the district court by the failure to object to a magistrate judge's recommendation.  In any event, the contention is without merit.  The time from the filing of a defendant's "motion to suppress until the conclusion of the appellate process directly attributable to that motion was properly excluded under article IV(a) of the [IADA]." United States v. Roy, 771 F.2d 54, 59 (2d Cir. 1985), cert. denied, 475 U.S. 1110 (1986).  We agree with that decision.  See United States v. Sawyers, 963 F.2d 157, 162 (8th Cir.), cert. denied, 506 U.S. 1006 (1992).

The judgment of the district court is affirmed.

_____