# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1992

_____

Bradley L. Winters

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 17, 2013
Filed: June 17, 2013

_____

Before LOKEN, MURPHY, and SHEPHERD,* Circuit Judges.

_____

LOKEN, Circuit Judge.

---

*Judge Colloton recused after the case was fully briefed and submitted without oral argument. Judge Shepherd was selected by a random draw of the remaining active judges and agreed to serve on the panel. The panel denies appellant Winters's *pro se* motion to expand the record on appeal regarding the recusal, a question decided solely by Judge Colloton.

After an interlocutory appeal and remand, a jury convicted Bradley Lee Winters of conspiracy to distribute and possession with intent to distribute methamphetamine. The district court sentenced him to 360 months in prison. Winters appealed, raising numerous issues. We affirmed. United States v. Winters, 600 F.3d 963 (8th Cir.) (Winters II), cert. denied, 131 S. Ct. 255 (2010). Winters now appeals the district court's[1] order dismissing his post-conviction motion to vacate and set aside the conviction and sentence. See 28 U.S.C. § 2255. Appointed counsel's brief raises a single issue: whether the district court erred by summarily dismissing this motion "without hearing evidence and allowing petitioner to fully litigate his motion." Having thoroughly reviewed the appeal under the standard of review our prior cases applied to this issue, we affirm.

## I. Factual and Procedural Background

In August 2002, Iowa law enforcement officers stopped a car being driven by Winters, with his mother as passenger. Search of the car uncovered a substantial quantity of methamphetamine under the passenger's seat, a large amount of cash under the driver's seat, and other evidence of drug activity. Subsequent warrant searches of two Des Moines residences Winters visited that day yielded additional evidence of drug trafficking. Winters was tried and convicted in Iowa state court of drug and tax stamp offenses. He then testified at the separate trial of his mother that he alone owned the drugs and drug paraphernalia found in the vehicle, that he came to Des Moines to purchase $10,000 worth of methamphetamine for personal use, and that his mother had no knowledge of the methamphetamine he purchased that day. A transcript of this testimony was read into evidence at Winters's federal trial.

---

[1] The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

In January 2005, the Supreme Court of Iowa overturned Winters's conviction, concluding that pre-trial delays violated his state law right to a speedy trial. State v. Winters, 690 N.W.2d 903 (Iowa 2005). Winters was then indicted on federal drug charges arising out of the same 2002 incident. Before trial, he moved to dismiss the charges on double jeopardy grounds and to suppress all evidence derived from the allegedly unlawful stop of his vehicle. The district court denied dismissal but granted the motion to suppress, concluding the stop was not a valid traffic or Terry[2] stop. Both sides appealed. Winters filed a "Pro se Supplemental Brief of Appellee" raising additional Fourth Amendment issues the district court had not addressed.

Our decision first affirmed the district court's Double Jeopardy Clause ruling because Winters's contention -- that his federal prosecution fell under the "sham" exception to the dual sovereignty principle -- was rejected in a controlling prior decision. United States v. Winters, 491 F.3d 918, 920 (8th Cir. 2007) ("Winters I"), citing United States v. Leathers, 354 F.3d 955 (8th Cir.), cert. denied, 543 U.S. 844 (2004). Turning to the district court's suppression ruling, we summarized the facts regarding the stop of Winters's vehicle in considerable detail, facts that are relevant to portions of the issue he raises in this § 2255 appeal:

> On August 28, 2002, northern Iowa law enforcement officer Logan Wernet advised the Iowa Division of Narcotics Enforcement that Winters and his mother would drive a 1991 red Pontiac Firebird, license number 152-LAA, from Mason City to the Des Moines area, where they would meet with an attorney in West Des Moines and then pick up methamphetamine in Des Moines. Both Winters and his mother had prior felony drug convictions. Agent Steven DeJoode and officer Kenneth O'Brien located the Firebird parked outside the attorney's office building. When Winters and his mother left the building and drove away, DeJoode and O'Brien followed them to a residence on the east side of Des Moines. A vehicle check revealed that two other vehicles parked at this residence -

---

[2]See Terry v. Ohio, 392 U.S. 1 (1968).

-3-

a blue Chevy Celebrity and a red Chevy pickup - were registered to individuals with prior drug arrests or convictions.

Several hours later, Winters drove away in the Firebird. His mother and several others drove away in the Celebrity. Both vehicles were followed to an apartment complex in southeast Des Moines, where the red Chevy pickup was also parked. Winters entered one apartment building, left after five minutes, entered a second building, and left after about nine minutes. He then drove away in the Firebird while his mother drove away with others in the Celebrity. About one mile from a major freeway interchange, Winters's mother got out of the Celebrity and into the Firebird with Winters. The Firebird proceeded north on I-35, followed by Iowa State Patrol Trooper Mark Griggs. At this time, Agent DeJoode directed Trooper Griggs to stop the Firebird, either for a traffic violation or for a Terry stop.

Following the stop, [Trooper] Griggs observed Winters and his mother move as if to place something in the front seat console. Griggs approached Winters, noticing his dilated pupils, body tremors, and a large lump in his pocket. When Winters declined Griggs's request for a pat-down, Griggs placed Winters in the patrol car and told him to keep his hands visible. When Winters failed to do so, Agent DeJoode, who had arrived on the scene, handcuffed Winters for security reasons. A drug detection dog was summoned and arrived 31 minutes after the initial stop. The dog detected narcotics in Winters's vehicle and was then led around the patrol car, where Winters was sitting. The dog indicated (specifically identified) the odor of narcotics emanating from Winters. Agent DeJoode searched Winters, discovering a plastic bag with two grams of methamphetamine, other bags containing drug residue, and what appeared to be notes of drug activity. The officers then searched the [car], uncovering a large amount of cash under the driver's seat, one-half pound of methamphetamine under the passenger's seat, and other evidence of drug activity.

Winters I, 491 F.3d at 920-21. We reversed the suppression ruling, concluding that the stop of Winters's vehicle was a valid Terry stop because "[Agent] DeJoode acted on 'specific and articulable facts' that gave him reasonable suspicion that Winters and

his mother were engaged in on-going illegal drug activity and that evidence of that activity would be found in the Firebird." Id. at 922. We declined to consider the issues raised by Winters *pro se*, leaving it to the district court on remand to determine "whether some or all of these issues have been properly preserved and therefore warrant further consideration, and perhaps further factual inquiry." Id. at 923.

On remand, Winters filed renewed motions to suppress, both *pro se* and by newly appointed counsel. These motions alleged, *inter alia*, that, because of prior counsel's ineffective assistance, our conclusions in Winters I were "riddled with factual errors." Winters asserted that newly discovered evidence would establish that Special Agent Feddersen lied at the suppression hearing, undermining our conclusion that the initial stop was valid. Winters also alleged that post-stop Fourth Amendment violations warranted suppression. The district court denied these pretrial motions after an evidentiary hearing, including Winters's request that a drug dog expert be appointed, and later denied Winters's post-trial motion for judgment of acquittal or a new trial on the ground that the suppression motion was improvidently denied. On direct appeal, Winters raised all these Fourth Amendment issues and further argued the indictment should have been dismissed for violations of the Interstate Agreement on Detainers Act (IADA). On this appeal, we denied Winters's repeated motions for leave to file a supplemental *pro se* brief. He then submitted a fifty-page "Amicus Brief or Supplement Pro Se Brief of Appellant" raising numerous issues, including seven pages detailing alleged "Ineffective Assistance of Pretrial and Trial Counsel." We denied leave to file the *pro se* brief and struck "the materials tendered with the motion." Appointed counsel then thoroughly briefed and argued the direct appeal. We affirmed in an opinion that fully reviewed all Fourth Amendment issues Winters had presented. Winters II, 600 F.3d at 965-70.

Winters then filed a lengthy *pro se* motion for § 2255 relief and, some months later, a more voluminous Second Amended Motion. The government moved to dismiss or for a more definite statement, arguing, *inter alia*:

The pending § 2255 motion, which [Winters] apparently will not permit counsel to alter, is not in a form which is readily susceptible to a responsive pleading. The original § 2255 motion contains a host of claims presented in a redundant, and often vague and conclusory, manner. [Winters] appears to be trying to retry [] every aspect of the criminal case, including the believability of testimony and persuasiveness of arguments, both those presented and those not presented in the criminal proceedings.

The district court granted this motion and ordered Winters, through appointed counsel, to "file a clarifying § 2255 motion which will be [a] short, succinct, and plain recitation of his § 2255 claims." Counsel then filed Petitioner's Amended and Substituted § 2255 Motion asserting nearly fifty separately enumerated claims, the only claims we consider properly raised in the district court. The court denied the Amended and Substituted Motion without a hearing, and this appeal followed.

On appeal, Winters has again filed multiple motions for leave to file voluminous *pro se* supplemental briefs, arguments, and additional fact materials. We deny these motions, as we did in considering his direct appeal. See United States v. Martin, 59 F.3d 767, 768 n.2 (8th Cir. 1995). Unlike the appointed attorneys he criticizes, Winters does not understand the limitations on § 2255 post-conviction relief, the standards for deciding claims of ineffective assistance of counsel, and the principle that issues of law and fact, once finally decided, may not be revisited.

## II. The Merits

On appeal, appointed counsel notes that the Amended and Substituted Motion raised "nearly 50 claims of ineffective counsel" and argues that the district court erred in denying the motion without holding an evidentiary hearing to consider the "187 pages of exhibits" Winters's attached to his *pro se* Second Amended Motion. A § 2255 motion "may be dismissed without hearing if (1) movant's allegations, accepted as true, would not entitle him to relief, or (2) [the] allegations cannot be

accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact." Koskela v. United States, 235 F.3d 1148, 1149 (8th Cir. 2001) (citation omitted). The district court's decision to deny an evidentiary hearing is reviewed for abuse of discretion. Tinajero-Ortiz v. United States, 635 F.3d 1100, 1105 (8th Cir.), cert. denied, 132 S. Ct. 315 (2011). "If we can determine from the motion and the supporting record in the case that [Winters] is not entitled to § 2255 relief, then no hearing was, or is now, required." Saunders v. United States, 236 F.3d 950, 952 (8th Cir.), cert. denied, 533 U.S. 917 (2001).

Counsel's brief on appeal summarizes 36 claims of ineffective assistance of pretrial, trial, and appellate counsel that were asserted in the Amended and Substituted Motion and therefor preserved for appeal.[3] We separately consider each claim, mindful that "the numerosity of the alleged deficiencies does not demonstrate by itself the necessity for habeas relief." United States v. Robinson, 301 F.3d 923, 925 n.3 (8th Cir. 2002), cert. denied, 537 U.S. 1238 (2003); see Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002), cert. denied, 538 U.S. 951 (2003).

A. Claims Relating to the Initial Traffic Stop. Winters seeks to relitigate the validity of the initial traffic stop in this post-conviction proceeding by asserting numerous ways in which pretrial, trial, and appellate counsel ineffectively pursued this fact-intensive issue. (1) Winters alleges that counsel was ineffective for not identifying and calling as a witness at the suppression hearing Lisa Lybarger, the informant who told Logan Wernet that Winters and his mother would be traveling to Des Moines in Winters's Firebird to purchase methamphetamine. Winters submitted a hand-written October 2009 affidavit in which Lybarger averred that she did not tell Wernet the color or license plate number of the vehicle, and did not give him "a

---

[3]Counsel's brief acknowledges he conceded in the district court that certain § 2255 claims raised by Winters *pro* se and asserted in the Amended and Substituted Motion "had been previously ruled on [or] were simply not actionable even if true." Appellant's Brief at 30. These issues were therefore abandoned on appeal.

specific lawyers name" or address they would visit, contrary to Special Agent Feddersen's suppression hearing testimony. (2) Winters further alleges that his attorneys were ineffective for failing to impeach the investigating officers' testimony at the suppression hearing and at trial with several discrepancies that could be extracted from their reports, prior state court suppression testimony, and a search warrant affidavit concerning where Winters's vehicle was first located in Des Moines, whether the informant reported that Winters and his mother would visit a lawyer, and how the informant's tip was corroborated.

The short answer to these contentions, individually and collectively, is that even if all of the alleged discrepancies were true, they would not alter our conclusion in Winters I that the officers had reasonable suspicion justifying a Terry stop of the Firebird as it drove away from Des Moines that day. See Winters II, 600 F.3d at 965-66. Lybarger's affidavit confirmed that she did report the most significant facts concerning Winters's trip to Des Moines. Moreover, Winters made no showing that Lybarger was available and would have testified for Winters at the suppression hearing, and that effective defense counsel would have called this seemingly hostile witness. These claims were properly denied without a hearing because, if accepted as true, they did not entitle Winters to relief. For the same reason, the claim that counsel was ineffective for failing to challenge on direct appeal the "blocking" maneuver used in effecting the initial stop was properly denied as without merit.

B. Claims Relating to Post-Stop Fourth Amendment Issues. Winters revisits these fully litigated suppression issues with a litany of ineffective assistance claims. First, he argues counsel was ineffective in failing to obtain an expert to determine whether the audio portion of the video tape offered at the suppression hearing was altered to falsely portray Winters as noncompliant so that he could be handcuffed. This speculative § 2255 claim is without merit for many reasons, the most obvious being that Winters failed to identify an expert and provide evidence of the testimony

that expert would have given at the suppression hearing or at trial.  See Rodela-Aguilar v. United States, 596 F.3d 457, 462 (8th Cir. 2010).

Second, Winters argues his attorneys were ineffective in failing to retain a drug dog expert prior to the initial suppression hearing to offer testimony that the dog's action was not an alert, and that any alert was unreliable due to the dog's poor health and prior training.  This claim is strictly one of timing.  After trial, Winters's attorney retained such an expert and argued that the expert's findings undermined the showing of probable cause to search Winters's person and his vehicle and therefore warranted a new trial.  On direct appeal, we thoroughly considered and rejected this and other issues relating to the drug dog.  "Even if a defense expert cast doubt on the reliability of Bobby's alerts," we concluded, "there was little if any likelihood this would undermine the district court's probable cause rulings."  Winters II, 600 F.3d at 969.  For the same reason, Winters cannot show prejudice *even if* counsel should have obtained the expert sooner.  See Strickland v. Washington, 466 U.S. 668, 694 (1984) (prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Winters next complains that counsel failed to raise numerous post-stop Fourth Amendment issues during the government's interlocutory appeal of the initial suppression ruling:  handcuffing Winters without probable cause; unreasonably prolonging detention until a drug dog arrived; using the drug dog to search his person without probable cause;[4] searching his vehicle based upon a defective dog alert; and

---

[4]The evidence relating to the drug dog's alert in the extensive trial court record, including the trial testimony of the dog's handler, consistently reflected that drug dog "Bobby" alerted as the dog circled *the exterior* of the patrol car in which Winters was placed after he was detained.  See Winters I, 491 F.3d at 921.  Thus, to the extent this ambiguous claim can be read as raising the distinct issue that Bobby was allowed to directly sniff Winters's person without a warrant, no hearing was required because that allegation is contradicted by the record.

searching his pockets and removing items known not to be weapons during a post-arrest frisk. Winters raised these issues in his *pro se* supplemental brief, we declined to consider them because they had not been addressed by the district court, and we invited their consideration on remand, which in fact occurred. See Winters I, 491 F.3d at 923; Winters II, 600 F.3d at 966-70. Thus, an evidentiary hearing was not needed on these § 2255 claims because no Strickland prejudice can be shown.

C. Other Pretrial Claims. (1) Winters alleged that counsel was ineffective for failing to move to dismiss the indictment because the government knowingly presented to the grand jury testimony by a witness the government had previously considered a liar. The basis for this allegation in Winters's *pro se* supporting materials confirms that the allegation is inherently incredible, as well as conclusory. Thus, even if such conduct might constitute prosecutorial misconduct warranting relief in an extreme case, the claim was properly denied without a hearing.

(2) Counsel's brief on appeal repeats the claim that counsel was ineffective for failing to move to dismiss the indictment because the police lied to obtain an improper waiver of the Attorney General's "Petite Policy."[5] This claim was properly abandoned in the district court. See Leathers, 354 F.3d at 962 (the Petite Policy "does not confer any substantive rights and its application cannot form the basis for a claim of improper prosecution").

(3) Winters claims that counsel was ineffective for failing to move to dismiss the indictment on double jeopardy, speedy trial, and misconduct grounds, namely, that the government prosecuted this federal case four years after it was dismissed in state court for speedy trial violations. These claims are without merit because we

---

[5] "The Petite Policy, an internal policy of the Department of Justice, states that a federal prosecution should not be based on substantially the same acts that were the basis for a prior state prosecution unless there is a compelling federal interest." United States v. Larsen, 427 F.3d 1091, 1094 (8th Cir. 2005).

rejected the underlying theories in deciding the prior two appeals. See Winters I, 491 F.3d at 920, noting Leathers controlled the double jeopardy and vindictive prosecution claims; Winters II, 600 F.3d at 970-71, rejecting speedy trial and IADA claims.

D. Claims Relating to Trial. Winters alleges that his trial attorney's performance was constitutionally deficient because he pursued a "buyer/seller" defense rather than presenting a general denial, a defense that the drugs were planted in the car without Winters's knowledge, and the defense that he withdrew from the conspiracy by backing out of a second attempted methamphetamine purchase. These claims were properly denied without a hearing. Because of the problems inherent in evaluating counsel's conduct in hindsight, courts "must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Strickland, 466 U.S. at 689. As the district court correctly noted, the evidence against Winters was strong. In such a case, determining what defenses to pursue, particularly when the choices may be mutually inconsistent or even in conflict, is the type of trial strategy decision that is "virtually unchallengeable." Id. at 690; Loefer v. United States, 604 F.3d 1028, 1030 (8th Cir. 2010). Winters produced no credible evidence supporting the implausible theory that someone else planted the drugs found in a car he was seen driving extensively that day. There is no chance that presenting only a general denial defense would have altered the jury's verdict, and a claim of belated withdrawal would not have been a defense to the conspiracy charge. On these claims, Winters established neither deficient performance nor prejudice.

Winters also alleges that his trial attorney's performance was deficient for failing to object to jury instruction 18, which permitted the jury to infer intent to distribute from possession of a large quantity of methamphetamine. The instruction was a correct statement of the law. See United States v. Thompson, 686 F.3d 575, 579-80 (8th Cir.), cert. denied, 133 S. Ct. 771 (2012).

-11-

Finally, Winters claims that trial counsel's assistance was ineffective as a result of various evidentiary failures: not impeaching three government witnesses with prior state court testimony; not eliciting testimony from a cooperating government witness that her daughter was at the crime scene and had an opportunity to plant the cash and drugs in Winters's car; not presenting relevant evidence of the vehicle's configuration; not objecting to introduction of Winters's testimony at his mother's trial as the fruit of unlawful coercion; and not offering Iowa prison records impeaching a portion of a government witness's testimony. On their face, these allegations and Winters's *pro se* supporting materials fail to clear the high hurdle of demonstrating deficient trial performance. In any event, we agree with the district court that an evidentiary hearing was not required because Winters "fail[ed] to allege any deficiency on the part of counsel that raises a reasonable probability that the result in this case would have been different had counsel taken additional steps."

E. Claims of Ineffective Assistance of Appellate Counsel. Winters alleges that his appellate attorneys "failed to raise meritorious issues on appeal" relating to multiple Fourth Amendment suppression issues, claims relating to government misconduct in securing the indictment, and whether the Petite Policy was violated. We interpret these claims as pertaining to both the interlocutory and the direct appeals. Different appellate counsel vigorously represented Winters on both appeals. Rigorous Strickland standards apply to both efforts:

> When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims. Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue.

Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006) (citations omitted), cert. denied, 552 U.S. 993 (2007). Here, as in Link, Winters "does not compare the

-12-

strength of [the claims not asserted] relative to those claims that were asserted on appeal." Id. Moreover, these Fourth Amendment and misconduct issues were all raised and rejected on the merits in one or both of the prior appeals. Winters simply clings to a mistaken belief that they could have been won with better lawyering. We conclude to the contrary. Therefore, the district court properly dismissed these claims without an evidentiary hearing.

For the foregoing reasons, we conclude the district court did not abuse its discretion in dismissing Winters's § 2255 motion without an evidentiary hearing. Accordingly, the Order of the district court dated April 4, 2012, is affirmed.

_____