# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1787
_____

United States of America

*Plaintiff - Appellee*

v.

Larry Dean Rederick

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: February 16, 2023
Filed: April 20, 2023

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

Larry D. Rederick moved to suppress evidence from a traffic stop, claiming that the officers unconstitutionally delayed it to conduct a drug-dog search and that the dog's alert did not provide probable cause to search. The district court[1] denied

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, adopting the report and recommendations of the Honorable Veronica L. Duffy, United States Magistrate Judge for the District of South Dakota.

most of the motion. A jury convicted Rederick for possession of 50 grams or more of methamphetamine with intent to distribute, and conspiracy to distribute 500 grams or more of a mixture and substance containing meth, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Rederick appeals the denial of the motion to suppress. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

In May 2019, an Agent with the South Dakota Division of Criminal Investigation began investigating Rederick for suspected drug activity. The Agent learned Rederick had sold meth. As part of the investigation, police monitored his cell phone location. On January 9, 2020, according to his cell phone, Rederick was driving to Nebraska to visit a person police knew was involved with the sale of narcotics. As Rederick returned to South Dakota, the Agent called Highway Troopers Eric Peterson and Cody Jansen, summarizing the investigation and requesting they stop Rederick. The Agent told the Troopers to try to establish independent probable cause for the stop, but if not, to stop Rederick to investigate the drug activity.

Rederick was driving a pickup truck pulling a trailer transporting a sedan. Trooper Peterson began following Rederick. The Trooper noticed the trailer did not have a light illuminating the rear license plate, a violation of S.D.C.L. § 32-17-11. He pulled Rederick over. Trooper Peterson then spent 16 minutes writing a warning ticket for the traffic violation. Within the first 12 minutes, he asked Trooper Jansen to bring the drug-dog unit to the scene. Twenty-two minutes into the stop, Trooper Jansen and his dog, Rex, arrived. Twenty-seven minutes into the stop, the dog alerted to the presence of a narcotic at both doors of the pickup and at the back of the sedan. Searching the vehicles, the Troopers found meth in the trunk of the sedan.

Rederick moved to suppress the evidence from the stop, arguing that the Troopers unreasonably prolonged it to conduct the dog's search and that the dog's alert did not provide probable cause to search the vehicles. The district court adopted

the magistrate judge's recommendation to suppress only Rederick's statements made after 16:36 during the stop (which is not challenged on appeal). The district court denied the suppression of all other evidence. A jury convicted Rederick on both counts. The district court sentenced him to 180 months. Rederick appeals.

This court reviews "the denial of the motion to suppress under a mixed standard of review." *United States v. Holly*, 983 F.3d 361, 363 (8th Cir. 2020). "We review the district court's findings of fact under the clearly erroneous standard, and the ultimate conclusion of whether the Fourth Amendment was violated is subject to *de novo* review." *United States v. Williams*, 777 F.3d 1013, 1015 (8th Cir. 2015). "We will reverse a finding of fact for clear error only 'if, despite evidence supporting the finding, the evidence as a whole leaves us with a definite and firm conviction that the finding is a mistake.'" *Holly*, 983 F.3d at 363, *quoting United States v. Williams*, 346 F.3d 796, 798 (8th Cir. 2003).

II.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002), *citing Terry v. Ohio*, 392 U.S. 1, 9 (1968). "Under the Fourth Amendment, a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). "Probable cause exists when a reasonable officer, confronted with the facts known to the officer at the time of the stop, could have believed that there was a fair probability that a violation of law had occurred." *United States v. Andrews*, 454 F.3d 919, 921 (8th Cir. 2006). To determine whether reasonable suspicion exists, courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273, *quoting United States v. Cortez*, 449 U.S. 411, 417 (1981).

The Troopers here had two lawful bases to stop Rederick. They had probable cause to stop him for the traffic violation. *See* **United States v. Sallis**, 507 F.3d 646, 649 (8th Cir. 2007) ("An officer has probable cause to conduct a traffic stop when he observes even a minor traffic violation."). The Troopers' motivation for the stop is irrelevant. *See* **Whren v. United States**, 517 U.S. 806, 813 (1996) ("We think these cases foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"), *citing* **United States v. Robinson**, 414 U.S. 218, 221 n. 1 (1973) (ruling that a traffic violation arrest was not rendered invalid by the fact it was "mere pretext for a narcotics search."); **United States v. Fuehrer**, 844 F.3d 767, 772 (8th Cir. 2016) (ruling that the officer's "observation of the traffic violation . . . gave him probable cause to stop the vehicle, and his subjective intent to detain the vehicle for a dog-sniff search is irrelevant").

The Troopers also had reasonable suspicion to stop Rederick from the collective knowledge of the Agent's investigation. "The collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion, and the collective knowledge can be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers." **United States v. Thompson**, 533 F.3d 964, 969 (8th Cir. 2008). The Agent communicated the facts from his investigation to Trooper Peterson, who then stopped Rederick. *See* **United States v. Jacobsen**, 391 F.3d 904, 907 (8th Cir. 2004) ("The patrol officer himself need not know the specific facts that caused the stop . . . the officer need only rely upon an order that is founded on reasonable suspicion."). *See also* **United States v. Williams**, 429 F.3d 767, 771-72 (8th Cir. 2005) (finding that the collective knowledge doctrine allowed the knowledge from the Drug Enforcement Agency's surveillance team to be imputed to the officer who received a radio request to stop the vehicle).

A.

Rederick argues that the Troopers illegally delayed the traffic stop in order to conduct a drug-dog search.

"[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). *See United States v. Watts*, 7 F.3d 122, 126 (8th Cir. 1993) ("The Fourth Amendment requires that a search not continue longer than necessary to effectuate the purposes of an investigative stop."). "Whether the duration of the stop is reasonable is determined by the seizure's 'mission,' and law enforcement must be 'reasonably diligent' in carrying out that mission." *United States v. Magallon*, 984 F.3d 1263, 1278 (8th Cir. 2021), *quoting Rodriguez*, 575 U.S. at 354. "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686, (1985). "[A]n investigative stop must cease once reasonable suspicion or probable cause dissipates." *Watts*, 7 F.3d at 126.

Rederick emphasizes the *Rodriguez* case. An officer there stopped a driver based solely on a traffic violation. *Rodriguez*, 575 U.S. at 351. Seven or eight minutes passed between the officer's issuing the ticket and the dog's alerting to the presence of drugs. *Id.* at 352. The Supreme Court granted certiorari to determine "whether police routinely may extend an otherwise-completed traffic stop, *absent reasonable suspicion*, in order to conduct a dog sniff." *Id.* at 353 (emphasis added). The *Rodriguez* decision held that "a seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 350-51, *citing Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Because the officers in *Rodriguez* did not have reasonable suspicion of drug-related activity

*before* the stop, the "dog sniff [was] not fairly characterized as part of the officer's traffic mission." ***Id.*** at 356.

Unlike in *Rodriguez*, the Troopers not only saw a traffic violation, but also had reasonable suspicion that Rederick was involved in drug-related activity. The Troopers testified that the purpose for stopping Rederick was to assist with the Agent's investigation, not for a traffic violation. The drug-dog search was, therefore, part of the Trooper's mission for conducting the traffic stop. *Cf.* ***United States v. Tuton***, 893 F.3d 562, 568 (8th Cir. 2018) ("[A] seizure justified only by a police-observed traffic violation . . . becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation."), *citing* ***Rodriguez***, 575 U.S. at 350-51.

"[A]ddressing the suspicion of drug activity require[s] time." ***Magallon***, 984 F.3d at 1279. In *United States v. Magallon*, police handcuffed a passenger in a locked patrol car for over an hour while questioning the driver about suspected drug activity. ***Id.*** at 1278. This court held that the police did not unreasonably delay the passenger's stop because "the mission of the stop was to investigate the GMC Sierra and its passengers' involvement with drug trafficking" and because reasonable suspicion of drug-related activity existed throughout the stop. ***Id.*** at 1279. Similarly, in *United States v. Murillo-Salgado*, a 23-minute stop—beginning as a traffic stop but evolving into an investigatory stop—was not an unconstitutional delay because the officer developed reasonable suspicion of drug-related activity during the routine traffic-stop tasks. ***United States v. Murillo-Salgado***, 854 F.3d 407, 416 (8th Cir. 2017).

The Troopers here had reasonable suspicion before stopping Rederick, which existed throughout the stop. Compared to the hour-long delay in *Magallon*, here only 27 minutes passed from the stop until the dog's alert. This delay did not violate the Fourth Amendment because the Troopers acted diligently to pursue the mission of the stop: to assist with the investigation of Rederick's drug-related activity.

Rederick argues that the drug dog was unreliable, and therefore its alert did not provide probable cause to search the vehicles.

"[A]n alert or indication by a properly trained and reliable drug dog provides probable cause for the arrest and search of a person or for the search of a vehicle." *United States v. Winters*, 600 F.3d 963, 967 (8th Cir. 2010). *See United States v. Jackson*, 811 F.3d 1049, 1052 (8th Cir. 2016) (concluding that "the positive alert by a reliable dog alone established probable cause"). "A drug detection dog is considered reliable when it has been 'trained and certified to detect drugs.'" *Winters*, 600 F.3d at 967, *citing United States v. Olivera-Mendez*, 484 F.3d 505, 512 (8th Cir. 2007). "If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Florida v. Harris*, 568 U.S. 237, 246-47 (2013). "Even if a drug dog's 'performance record raises questions about his reliability,' . . . the issue is whether 'the totality of the circumstances present at the scene' provided probable cause to search." *Winters*, 600 F.3d at 968 (finding probable cause from the drug dog's alert and the officer's observation of the driver's body tremor, dilated pupils, and strong "chemical" odor), *citing United States v. Donnelly*, 475 F.3d 946, 955 (8th Cir. 2007). "Contrary evidence 'that may detract from the reliability of the dog's performance properly goes to the "credibility" of the dog,' a finding we review for clear error." *Id.* at 967, *citing United States v. Diaz*, 25 F.3d 392, 394 (6th Cir. 1994).

The sufficiency of a drug dog's alert must be construed with the same "flexible, common-sense standard" as probable cause. *Harris*, 568 U.S. at 240. *See Jackson*, 811 F.3d at 1052 (ruling that the dog's alert provided probable cause to search the defendant's aircraft even though it was the dog's first field operation).

Rederick claims that the dog's alert was insufficient because video footage does not show the full alert, and because the methods used to train Rex were

unreliable. Rederick's expert, Dr. Mary E. Cablk, testified that Rex's training program—based on the Utah Peace Officer Standards and Training (POST) training model—produces unreliable results because it does not use double-blind studies and is based on outdated psychology for dog training. Dr. Cablk also criticized the training records for Rex, claiming they were confusing and incomplete.

Lieutenant Christopher Koltz, supervisor for all police dog teams in South Dakota, testified at the suppression hearing. He explained that South Dakota's training program, while based on the Utah POST method, is "not lock step" with it. According to him, South Dakota's training program uses blind procedures (but not double-blind), and the training methods have been updated in accordance with current psychology for dog training (but the manual remains outdated). Trooper Jansen testified about the 240-hour training course he completed with Rex. Rex learned to detect meth (and five other illegal substances). Trooper Jansen learned how to handle Rex, conduct search patterns, and observe Rex's behavior. At the end of the certification, Trooper Jansen and Rex received passing scores in seven real-world scenarios. Each month after the certification, Rex and Trooper Jansen completed 16 more training hours. Rex passed his recertification test in 2020, but retired in 2021 due to injury.

Trooper Jansen testified that during Rederick's stop, Rex exhibited alert behavior at both doors of the pickup and at the back of the sedan. Rex's alert behavior at the back of the sedan was changing his breathing and wagging his tail faster. Although Dr. Cablk criticized Rex's records, a drug dog can be reliable despite incomplete records. *See **Harris***, 567 U.S. at 242 (finding that the drug dog was reliable although its handler admitted the dog's performance records were not perfect). True, one court found the Utah POST model unreliable because the certification processes used there, unlike South Dakota's program, did not use either single-or double-blind procedures and the dog's accuracy could not be deciphered from the training records. *See **United States v. Jordan***, 455 F. Supp. 3d 1247, 1256 (D. Utah 2020). Unlike the records in *Jordan¸* Rex's accuracy can be deciphered because the training records indicate scores for positive identifications.

-8-

Based on the totality of the circumstances at the scene of the stop, the dog's alert provided probable cause to search the vehicles. *See United States v. Holleman*, 743 F.3d 1152, 1157 (8th Cir. 2014) (ruling that the drug dog's alert was reliable enough to provide probable cause even though the dog failed to display a "full indication" of the drug's location). While Dr. Cablk challenged the reliability of the training program, she admitted she could not specifically say whether Rex was reliable. Asked "And so is your ultimate opinion about Rex that he is unreliable specifically?" Dr. Cablk responded, "I can't tell you that he is or he isn't." To assess the reliability of a dog's alert, courts should "evaluate all of the evidence, and should not prescribe an inflexible set of requirements." *Harris*, 568 U.S. at 245 ("[A] finding of a drug-detection dog's reliability cannot depend on the State's satisfaction of multiple, independent evidentiary requirements.").

The district court did not clearly err in concluding that by the totality of circumstances, Rex was reliable and the alert provided probable cause to search. The district court properly denied the motion to suppress.[2]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[2]This court thus need not address Rederick's claim that the evidence from two subsequent searches should be suppressed as the fruit of an unlawful search.